[Crim. No. 24471. Aug. 27, 1987.]

THE PEOPLE, Plaintiff and Respondent, v.
PAUL E. THOMAS, Defendant and Appellant.

**COUNSEL**

Randy Montesano, under appointment by the Supreme Court, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, William D. Stein and Edward P. O'Brien, Assistant Attorneys General, and Eugene W. Kaster, Deputy Attorney General, for Plaintiff and Respondant.

**OPINION**

ARGUELLES, J.—We granted a hearing in this case to decide whether defendant's conviction of involuntary manslaughter violated his due process right to fair notice of the charges against him. Since we conclude the accusatory pleading afforded him adequate notice, we affirm.

### FACTS

One evening in 1981, Danita R. was at a nightclub with her friend Valerie. They accepted a ride home with a man named Joe and victim Tommy Myers. Danita R. was acquainted with Myers since he had previously dated her sister. After the foursome stopped at Valerie's house, Myers offered to drive Danita home and she accepted. Before taking her home, however, he drove to a hilly area and raped her. She did not report the incident to police, thinking police would not believe her story because she had voluntarily entered the van with Myers. However, she told her sisters about the rape.

Defendant arrived at Danita's home to pick up their daughter for the weekend. Although she did not tell him about the rape, he attended a family gathering on Sunday and overheard that Danita had been raped by a man named "Tommy." When he returned the child after the weekend, Danita mentioned the rape to defendant. When he asked her the identity of the perpetrator, she declined to reply but said she would "take care of it." Defendant thereafter fell asleep in the bedroom.

Later that evening, Myers arrived at Danita's home and demanded to know why she was telling people he had raped her. She first replied she had not told anyone and then said that in any case the claim of rape was true. Myers retorted "That's all right, you going [*sic*] get yours." Just then, defendant emerged from the bedroom and suggested they step outside so that they could "talk about it." According to defendant, Myers made a motion to raise his shirt. Both defendant and Danita testified they saw an outline of a gun under Myers's shirt. Defendant lunged at Myers and the two men struggled, first in the doorway, then on the porch, and finally on the lawn.

One shot was discharged into the air while the men struggled. A second shot was fired at close range and struck Myers in the stomach. A neighbor, Carl Douglas, testified he was awakened by the first shot and saw the men from his bedroom window. According to Douglas, the two men had ceased struggling and were standing and facing each other when the second and ultimately fatal shot was fired and the victim fell to the ground. Douglas did not see a gun nor who fired the shot although he did see a flash. Danita testified she saw the men struggling but went back into the apartment when the first shot was fired and as a consequence did not see the second shot. Shortly after the second shot, defendant reentered the apartment, retrieved his shoes and clothes and left the scene. A few days later, he consulted an attorney and turned himself in.

At trial, defendant claimed Myers was shot accidentally while the two men struggled with the gun and each other. He testified both men had their hands on the gun when it went off and that he did not release his hold on the gun because he believed Myers would have shot him. Defendant and his witnesses testified Myers was the aggressor and was the one who brought the gun to the apartment. No gun was found nor did any party explain what happened to the weapon. A friend who had been with Myers earlier in the day testified he had not seen a gun. Defendant conceded he had once owned a gun but had reported it stolen in 1977.

Both the prosecution and defense submitted instructions on voluntary and involuntary manslaughter. In conference in chambers, however, defense counsel withdrew his request for involuntary manslaughter instructions, believing "the case should be voluntary or nothing." Concerning the prosecution's request for an involuntary manslaughter instruction, defense counsel stated "I don't desire nor request an objection to giving of [an] involuntary manslaughter [instruction]. I do not object to the giving of it." The court ruled the involuntary manslaughter instructions should be given because it "is a theory of the People" and there was at least circumstantial

evidence that defendant had brandished the gun after he gained possession of it.

The jury returned special verdicts finding defendant not guilty of voluntary manslaughter (former Pen. Code,[1] § 192, subd. 1) but guilty of involuntary manslaughter. (Former § 192, subd. 2.)[2] They also found the charged gun-use enhancement true. (§ 12022.5.) On appeal, the judgment of conviction was affirmed by Division Three of the First District Court of Appeal.

DISCUSSION

We begin with the preeminent principle that one accused of a crime must be "informed of the nature and cause of the accusation." (U.S. Const., Amend. VI.) ■ "It is fundamental that 'When a defendant pleads not guilty, the court lacks jurisdiction to convict him of an offense that is neither charged nor necessarily included in the alleged crime. [Citations.] This reasoning rests upon a constitutional basis: "Due process of law requires that an accused be advised of the charges against him in order that he may have a reasonable opportunity to prepare and present his defense and not be taken by surprise by evidence offered at his trial." [Citation.]' (*People* v. *West* (1970) 3 Cal.3d 595, 612 [citations].)" (*People* v. *Lohbauer* (1981) 29 Cal.3d 364, 368 [173 Cal.Rptr. 453, 627 P.2d 183]; see also *In re Robert G.* (1982) 31 Cal.3d 437, 440 [182 Cal.Rptr. 644, 644 P.2d 837]; *People* v. *Anderson* (1975) 15 Cal.3d 806, 809 [126 Cal.Rptr. 235, 543 P.2d 603]; *In re Hess* (1955) 45 Cal.2d 171, 174-175 [288 P.2d 5]; *In re Oliver* (1948) 333 U.S. 257, 273 [92 L.Ed. 682, 694, 68 S.Ct. 499].) ■ "No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal." (*Cole* v. *Arkansas* (1948) 333 U.S. 196, 201 [92 L.Ed. 644, 647, 68 S.Ct. 514].)

At the time of the offense, section 192 provided as follows: "Manslaughter is the unlawful killing of a human being, without malice. It is of three kinds." Section 192 then listed the different kinds of manslaughter: "1 Voluntary—upon a sudden quarrel or heat of passion. [¶] 2 Involuntary—in the commission of an unlawful act, not amounting to a felony; or in the commission of a lawful act which might produce death, in an unlawful manner, or without due caution and circumspection. This subdivision shall

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] The subdivisions of section 192 were renumbered in 1984 from 1, 2, and 3 to the more conventional (a), (b), and (c). (Stats. 1984, ch. 742, § 1, pp. 2703-2704.)

not apply to acts committed in the driving of a vehicle. [¶] 3 In the driving of a vehicle . . . [vehicular manslaughter]."

■ Defendant contends he was improperly convicted of involuntary manslaughter since the information specifically and exclusively charged him with voluntary manslaughter. Since he asserts involuntary manslaughter is not a necessarily lesser included crime of voluntary manslaughter, he claims his conviction cannot stand since it was for a crime not charged in the information. In response, the People counter that what is at issue is not whether involuntary manslaughter is a necessarily lesser included offense of voluntary manslaughter, but instead whether defendant was given sufficient notice that he could be convicted of involuntary manslaughter. Since the People contend the information made out a *general* charge of manslaughter rather than a *specific* charge of *voluntary* manslaughter only, they claim the defendant should have been on notice he faced a potential conviction of either type of manslaughter.

■ It has long been the law that a "charge of murder includes by implication a charge of the lesser degree of murder as well as voluntary and involuntary manslaughter." (*Stone* v. *Superior Court* (1982) 31 Cal.3d 503, 517 [183 Cal.Rptr. 647, 646 P.2d 809]; see also *In re McCartney* (1966) 64 Cal.2d 830, 831 [51 Cal.Rptr. 894, 415 P.2d 782]; *People* v. *Gilmore* (1854) 4 Cal. 376, 380.) A necessary corollary of this rule is that a charge of manslaughter, that is, an unlawful killing of a human being without malice, charges both voluntary and involuntary manslaughter. (*People* v. *Pearne* (1897) 118 Cal. 154, 157 [50 P. 376]; see also *People* v. *Herbert* (1936) 6 Cal.2d 541, 547 [58 P.2d 909] [the manner in which an unlawful killing occurred need not be pleaded]; *People* v. *Dobbs* (1945) 70 Cal.App.2d 261, 265-266 [161 P.2d 46], superseded by statute on another point, *People* v. *Alves* (1957) 154 Cal.App.2d Supp. 877, 879 [315 P.2d 755]; 17 Cal.Jur.3d (1984 rev. ed.) Criminal Law, § 327, pp. 480-481; but see *People* v. *Edwards* (1985) 39 Cal.3d 107, 116, fn. 10 [216 Cal.Rptr. 397, 702 P.2d 555] [suggesting involuntary manslaughter may not be included in a charge of second degree murder in all circumstances].)

■ The information in this case charged defendant with "the crime of felony, to wit: Violation of Section 192.1 of the California Penal Code, committed as follows: The said defendant(s), . . . did wilfully, unlawfully, and with/o[ut] malice aforethought kill Tommy Myers, a human being." (Capitals in original.) Since the information thus appears to charge an unlawful killing of a human being without malice, it follows a general charge of manslaughter is made out and defendant should have been on notice that he could be convicted of involuntary manslaughter.

*Pearne, supra*, 118 Cal. 154, is instructive. In that case, the indictment charged that the defendant "did deliberately, wilfully, and unlawfully kill one Ellen Dogan." The evidence showed, however, that the killing occurred when the defendant, while intoxicated, had driven his team of horses in so reckless a manner as to strike and fatally injure the victim, "[a] feeble old woman [who had] selected this inopportune time to attempt a voyage across the street . . . ." (*Id.* at p. 156.) The jury found the defendant guilty of involuntary manslaughter.

The defendant on appeal claimed that a fatal variance had occurred and urged that the indictment failed to provide him with adequate notice of the charge against which he would be required to defend. This court, per Justice Garoutte, concluded to the contrary: "If this indictment had simply charged an 'unlawful killing,' without malice, it would have charged the crime of manslaughter of both kinds, voluntary and involuntary. By the additional words 'deliberately and willfully,' it certainly should not be held that it charges less than it did before those words were added. An 'unlawful killing' is still charged, and such a killing constitutes involuntary manslaughter. It might with the same reason be urged that under an indictment charging a killing with malice and premeditation a conviction for killing without malice and premeditation would not be sustained. Yet it has always been held that upon an indictment charging murder a conviction for manslaughter was proper. In other words, when an indictment charges murder it also charges manslaughter. An indictment laid for murder charges an intentional killing; yet, under the criminal practice and procedure in this state, there is no doubt but that a verdict of involuntary manslaughter would find support in such a pleading. This is so because involuntary manslaughter is the 'unlawful killing of a human being,' and such crime is always included in an indictment for murder." (*Pearne, supra*, 118 Cal. at p. 157.)

Defendant would distinguish *Pearne,* pointing out that although both the information here and the indictment in *Pearne* alleged an unlawful killing, the information in the instant case went further and specified defendant had violated the precise Penal Code section which describes voluntary manslaughter. Indeed, at first blush, it appears the information charges defendant with voluntary manslaughter exclusively because of the numeric expression "SECTION 192.1" in the information, an apparent reference to the section describing voluntary manslaughter, former section 192, subdivision (1).[3]

---

[3] There are and were no sections bearing the numbers 192.1 or 192.2 in our Penal Code. As the proceedings in this case demonstrate, however, it appears to have been the practice to refer to the various subdivisions of former section 192 in this fashion, i.e., "192.1" designating former section 192, subdivision 1 (voluntary manslaughter) and "192.2" designating former

■ However, it is clear that a valid accusatory pleading need not specify by number the statute under which the accused is being charged. (*People* v. *Schueren* (1973) 10 Cal.3d 553, 558 [111 Cal.Rptr. 129, 516 P.2d 833]; *People* v. *Deas* (1972) 27 Cal.App.3d 860, 863 [104 Cal.Rptr. 250].) Section 952, which governs how an offense should be stated in an accusatory pleading, merely provides in pertinent part that "[i]n charging an offense, each count shall contain, and shall be sufficient if it contains in substance, a statement that the accused has committed some public offense therein specified. Such statement may be made in ordinary and concise language without any technical averments or any allegations of matter not essential to be proved. It may be in the words of the enactment describing the offense or declaring the matter to be a public offense, or in any words sufficient to give the accused notice of the offense of which he is accused."

Moreover, "[n]o accusatory pleading is insufficient, nor can the trial, judgment, or other proceeding thereon be affected by reason of any defect or imperfection in matter of form which does not prejudice a substantial right of the defendant upon the merits." (§ 960.)

Given that a specific statutory enumeration is not a prerequisite for a valid accusatory pleading under section 952, it is unremarkable that we have held "the specific allegations of the accusatory pleading, rather than the statutory definitions of offenses charged, constitute the measuring unit for determining what offenses are included in a charge." (*People* v. *Marshall* (1957) 48 Cal.2d 394, 404 [309 P.2d 456].) More importantly, "even a reference to the wrong statute has been viewed of no consequence under the circumstances there appearing [citations]." (*Schueren, supra*, 10 Cal.3d at p. 558.)

Some past cases are illustrative. In *People* v. *Siegel* (1961) 198 Cal.App.2d 676 [18 Cal.Rptr. 268], the defendant was charged with attempted escape. The indictment in that case charged a violation of section 664, the general attempt section. However, by its very terms, section 664 only applied to attempted crimes "where no provision is made by law for the punishment of such attempts." Since section 4532, subdivision (b) more specifically set forth the crime of attempted escape and also provided for specific punishments, the defendant argued the failure of the indictment to specify the correct statutory section was fatal and required reversal. The *Siegel* court recognized the defect but held it was not prejudicial. "The charging language of the indictment is exactly that which would support a charge under section 4532, subdivision (b). Defendant was fully apprised of the offense of

---

section 192, subdivision 2 (involuntary manslaughter). As stated above, the subdivisions of section 192 have since been renumbered. (See fn. 2, *ante*, at p. 823.)

which he was being tried . . . [and t]he mistake in the number of the section is unimportant." (*Siegel, supra,* at pp. 683-684.)

Similarly, in *People* v. *Rivers* (1961) 188 Cal.App.2d 189 [10 Cal.Rptr. 309], the defendant was charged with sale of narcotics but the accusatory pleading set forth the incorrect Health and Safety Code section, apparently due to the prosecutor's ignorance of the fact that the Legislature had recently amended and renumbered the relevant statutes. After declaring the error was harmless, the court emphasized that "[t]he purpose of the requirement of certainty in an indictment or information is to apprise the accused of the charges against him so that he may adequately prepare for his defense. It is clear from the language of the information quoted above that the defendant knew he was being charged with the sale of narcotics. . . . Thus, the appellant was plainly informed of the nature of his offense, and the designation of the wrong code section is immaterial. [Citations.] The defect was merely one of artificiality rather than substance." (*Rivers, supra,* at p. 195; see also *Isaac* v. *Superior Court* (1978) 79 Cal.App.3d 260, 263 [146 Cal.Rptr. 396]; *People* v. *Ramirez* (1972) 27 Cal.App.3d 660, 665 [104 Cal.Rptr. 102]; *People* v. *Diaz* (1962) 208 Cal.App.2d 41, 51 [24 Cal.Rptr. 887]; accord *Williams* v. *United States* (1897) 168 U.S. 382 [42 L.Ed. 509, 18 S.Ct. 92].)

■ Defendant would argue these cases are inapposite since the defendants in the above cases were not misled by the specification by number of an inapplicable statute. By contrast, he asserts he was actively misled by the pleading that he faced a charge of voluntary manslaughter to the exclusion of all other crimes. As we have seen, the specific enumeration of "Section 192.1" in the information is not controlling if the specific language in the accusatory pleading is sufficient to inform the defendant of the charges to which he should prepare a defense. (*Marshall, supra,* 48 Cal.2d at p. 404.) Thus, we must examine the precise wording of the information before evaluating defendant's claim he was misled as to the charges he faced.

Aside from the portion of the information specifying "192.1" by number, the language of the information alleges defendant "did wilfully, unlawfully, and with/o[ut] malice aforethought kill TOMMY MYERS, a human being." (Capitals in original.) It is apparent that but for the word "wilfully," this decisive phrase in the information merely alleges an unlawful killing of a human being without malice, i.e., a general charge of manslaughter. Thus, the critical question is whether inclusion of the word "wilfully" modified the remainder of the phrase such that voluntary manslaughter is charged to the exclusion of involuntary manslaughter.

■■ The People correctly note the allegation defendant acted "wilfully" does not charge he acted with intent to kill. "The word 'willfully,'

when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act, or make the omission referred to. It does not require any intent to violate law, or to injure another, or to acquire any advantage." (§ 7, subd. 1.) Thus, inclusion of the word "wilfully" did not limit the crime charged in the information to an intentional homicide, i.e., voluntary manslaughter.

*Pearne* again assists us. Recall that in *Pearne* the indictment alleged the defendant "did deliberately, wilfully, and unlawfully kill one Ellen Dogan." (*Pearne, supra,* 118 Cal. at p. 157.) Although the defendant claimed the indictment charged voluntary manslaughter only, this court found the allegation of an unlawful killing was not circumscribed by the inclusion of the words "deliberately" and "wilfully." "By the additional words 'deliberately and willfully,' it certainly should not be held that it charges less than it did before those words were added. An 'unlawful killing' is still charged, and such a killing constitutes involuntary manslaughter." (*Ibid.*)

By parity of reasoning, the inclusion of the word "wilfully" in the instant accusatory pleading does not transmogrify the crime charged from manslaughter generally to voluntary manslaughter exclusively. Thus, we find the language of the accusatory pleading adequately notified defendant he faced a general charge of manslaughter and he should have been prepared to defend against proof showing commission of either a voluntary or involuntary manslaughter. Since "the specific allegations of the accusatory pleading, rather than the statutory definitions of offenses charged, constitute the measuring unit for determining what offenses are included in a charge" (*Marshall, supra,* 48 Cal.2d at p. 404), it follows defendant's claim the information exclusively charged voluntary manslaughter is without merit.[4]

■ Moreover, even assuming arguendo defendant could convince us the information was unclear due to its reference to "SECTION 192.1" and that he acted "wilfully," it is manifest he has not demonstrated he was prejudiced by the admittedly inartful wording of the information. First and foremost, the record shows defense counsel initially requested instructions on involuntary manslaughter. Thus, defendant's claim on appeal and in this court he lacked notice he faced a potential conviction for involuntary manslaughter is disingenuous. Moreover, defense counsel's express decision not to object to the prosecutor's request for an involuntary manslaughter in-

---

[4] In so concluding, we have no occasion to discuss defendant's claim that once a prosecutor elects to charge commission of a crime in a particular manner, he or she is bound by that election. (See *People v. Smith* (1902) 136 Cal. 207, 209 [68 P. 702] [charge of burglary during the nighttime cannot sustain a conviction of daytime burglary]; *People v. Feldman* (1959) 171 Cal.App.2d 15, 22-24 [339 P.2d 888] [charge of receiving stolen property cannot sustain a conviction for concealing stolen property].)

struction reveals his earlier request to withdraw the instruction was a tactical decision rather than merely the correction of an oversight as suggested at oral argument.

If defense counsel's request for an involuntary manslaughter instruction and his later failure to object to the prosecution's instruction were not sufficient to show a lack of prejudice to defendant, scrutiny of the preliminary examination record is conclusive. ■ "Notice of the particular circumstances of the offense is given not by detailed pleading but by the transcript of the evidence before the committing magistrate . . . ." (*People* v. *Roberts* (1953) 40 Cal.2d 483, 486 [254 P.2d 501]; see also *People* v. *Anderson* (1961) 55 Cal.2d 655, 657 [12 Cal.Rptr. 500, 361 P.2d 32]; *Sallas* v. *Municipal Court* (1978) 86 Cal.App.3d 737, 742 [150 Cal.Rptr. 543]; *People* v. *Jackson* (1961) 191 Cal.App.2d 296, 303 [12 Cal.Rptr. 748].)[5]

■ The transcript in this case shows the prosecutor argued to the magistrate that the only issue was whether the "Court is going to hold on a 187 or on a 192.1. I would point out that this may very well end up in a category of 192 or 192.1 *or 192.2*. However, that would be for the defendant to come forward and tell this Court or any other jury about the claim[ed] self-defense or any other provocation that caused him to kill Mr. Myer[s]." (Italics added.) The parties submitted the matter shortly thereafter. Thus, the record of the preliminary examination reveals defendant should have been aware he faced a possible conviction for section "192.2," i.e., involuntary manslaughter.[6]

---

[5] Defendant's reliance on *Givens* v. *Housewright* (9th Cir. 1986) 786 F.2d 1378, is thus unpersuasive. In *Givens,* the Ninth Circuit Court of Appeals granted relief on habeas corpus to a Nevada inmate convicted of first degree murder. Like our Penal Code, Nevada statutes allow a conviction for first degree murder absent a showing of intent to kill if the murder was committed by torture. (Compare Nev. Rev. Stat., § 200.030, quoted in *Givens, supra,* at p. 1380, fn. 2, with Cal. Pen. Code, § 189.) Although the appropriate statute was cited by number in the Nevada information, the Ninth Circuit found the defendant lacked notice of the charges against him (see *Russell* v. *United States* (1962) 369 U.S. 749, 765 [8 L.Ed.2d 240, 251-252, 82 S.Ct. 1038]) since the information did not specifically state the People would rely on a torture theory. (*Givens, supra*, at pp. 1380-1381.)

However, it has long been the law in this state that an accusatory pleading charging murder need not specify degree or the manner in which the murder was committed. (*In re Walker* (1974) 10 Cal.3d 764, 781 [112 Cal.Rptr. 177, 518 P.2d 1129]; *People* v. *Risenhoover* (1968) 70 Cal.2d 39, 50 [73 Cal.Rptr. 533, 447 P.2d 925], cert. den. *Risenhoover* v. *California* (1969) 396 U.S. 857 [24 L.Ed.2d 108, 90 S.Ct. 123].) Thus, even where the People intend to rely on a felony-murder theory, the underlying felony need not be pleaded in the information. (*Walker, supra.*) Neither is it necessary to specifically plead the charged murder was wilful, deliberate, and premeditated. (*People* v. *Mendez* (1945) 27 Cal.2d 20, 23 [161 P.2d 929].) So long as the information adequately alleges murder, the evidence adduced at the preliminary hearing will adequately inform the defendant of the prosecution's theory regarding the manner and degree of killing. (*Roberts, supra*, 40 Cal.2d at p. 486.) Inasmuch as *Givens, supra*, 786 F.2d 1378, fails to discuss this point, it fails to persuade.

[6] That the magistrate thereafter held defendant to answer for "one Count violation of 192.1 of the California Penal Code" rather than a general charge of manslaughter is immaterial.

■ By requiring a showing the defendant was misled to his detriment by the information, we do not contradict our decision in *People* v. *Lohbauer, supra*, 29 Cal.3d at pp. 369-370. In that case, the defendant was charged with burglary "in that . . . he entered the house of [victim] . . . with intent to commit theft." (*Id.* at p. 368.) He was acquitted of burglary but convicted of entering a noncommercial dwelling without the consent of the owner, a misdemeanor. (§ 602.5.) We reversed, noting section 602.5 was not a necessarily lesser included offense of burglary. Significantly, we rejected the People's suggestion we adopt a new test "in which we would hold immaterial any variance between an offense charged and a lesser offense of which a defendant is convicted unless 'the defendant was misled to his prejudice and prevented from preparing an effective defense.'" (*Id.* at pp. 369-370.)

However, *Lohbauer* was a case in which the defendant was convicted of a crime *not charged* in the accusatory pleading. Thus, we reasoned application of a prejudice test in that case "would violate previously well settled interpretations of statutory language" since section 1159 limits a trier of fact to convicting only of crimes charged, crimes included in the charged offenses, and attempts to commit the charged offenses. (*Lohbauer, supra*, at p. 370.) By contrast, the defendant here was convicted of a crime fairly charged in the accusatory pleading where the pleading merely included some extraneous and possibly misleading information. Given that we find the accusatory pleading, coupled with the transcript of the preliminary examination, was adequate to notify the defendant he faced a charge of involuntary manslaughter, it follows inclusion of the possibly misleading information should not lead to reversal unless he was actually misled to his prejudice. Since it is clear from the record he was not, reversal is not justified.

*People* v. *Neal* (1984) 159 Cal.App.3d 69 [205 Cal.Rptr. 384], presented a similar situation and engaged in the proper analysis. In *Neal*, the defendant was charged with various sex crimes as well as an enhancement for using a deadly weapon, specified in the information as a violation of section 12022, subdivision (b). After the jury found the use enhancement true, the trial court sentenced the defendant under section 12022.3, a more specific enhancement provision applying only to enumerated violent sex offenses and carrying a three-year enhancement term rather than the one-year term carried by section 12022, subdivision (b). On appeal, the *Neal* court correctly identified the issue as "whether the misstatement of the code section . . . requires modification of the judgment to reduce the enhancement to the one pleaded." (*Neal, supra*, at p. 73.) The court held in the negative: "where the

---

The People are entitled to file an information charging "any offense or offenses shown by the evidence taken before the magistrate to have been committed." (§ 739.)

information puts the defendant on notice that a sentence enhancement will be sought, and further notifies him of the facts supporting the alleged enhancement, modification of the judgment for a misstatement of the underlying enhancement statute is required *only where the defendant has been misled to his prejudice*. [Citations.] In the present case appellant makes no claim of prejudice, nor can we conceive of any in the circumstances of this case." (*Id.* at pp. 73-74 (italics added).)

We recognize one recent decision has reached a conclusion at odds with *Neal*. In *People* v. *Bergman* (1984) 154 Cal.App.3d 30, 37-39 [201 Cal.Rptr. 54], the defendant was charged with murder, rape, forced oral copulation, and kidnapping. (§§ 187, 261, subds. 2, 3, 288a, subd. (c), 207.) In addition, the information stated: "It is further alleged that in the commission and attempted commission of the above offense [appellant] personally used a firearm, to wit, a handgun, within the meaning of Penal Code Sections 12022.5 and 1203.06(a)(1)." (*Bergman, supra,* at p. 37, fn. 13.) Section 12022.5 provided for an enhancement term of two years. After the jury convicted him on all counts, however, the sentencing court imposed two enhancement terms under section 12022.3, which provides for a three-year enhancement term for gun use during enumerated sex crimes. The *Bergman* court held "[t]he effect of designating section 12022.5 in the information and using the charging language which was employed, was to give appellant notice that additional two-year enhancements would be sought under that section. He was given no notice up to the time of sentence that any three-year enhancement [under section 12022.3] was sought." (*Id.* at p. 38.)

The flaw in *Bergman's* analysis is the court's failure to recognize the language of the pleading itself —irrespective of the statutory specification— should have alerted the defendant he faced the increased enhancement term. Thus, it is not true the defendant in *Bergman* was given "no notice" since the wording of the information shows he must have been cognizant he was called on to refute an allegation he used a firearm during the commission of the charged felonies. Since we have seen it is the language of the accusatory pleading which is controlling and not the specification of the statute by number (*Marshall, supra,* 48 Cal.2d at p. 404), the proper inquiry in *Bergman* should have been whether the defendant was misled to his prejudice by the notation in the information that he was charged with an enhancement under section 12022.5 rather than section 12022.3. Since, as in *Neal, supra,* 159 Cal.App.3d 69, it did not appear the defendant in *Bergman* would have prepared his defense any differently had he been subjectively aware a three-year term could be imposed under section 12022.3, he suffered no prejudice and reversal on this ground was unwarranted. *Bergman* is therefore disapproved to the extent it is inconsistent with our opinion.

Since we thus conclude the information made out a general charge of manslaughter, defendant's conviction for involuntary manslaughter did not violate his due process right to notice of the charges against him. Moreover, even if the accusatory pleading was defective, defendant has not demonstrated he was misled to his prejudice and reversal is therefore inappropriate in this case. We have also reviewed defendant's remaining contentions and find they were correctly resolved by the Court of Appeal. For the reasons stated by that court, we find each of these contentions is meritless. (See *People* v. *Ford* (1981) 30 Cal.3d 209, 215 [178 Cal.Rptr. 196, 635 P.2d 1176].)

The judgment of conviction is affirmed.

Lucas, C. J., Mosk, J., Broussard, J., Panelli, J., Eagleson, J., and Kaufman, J., concurred.

Appellant's petition for a rehearing was denied October 22, 1987, and the opinion and judgment were modified to read as printed above.