Filed 7/2/15  In re Armando L. CA5

<u>**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re ARMANDO L., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>        v.<br><br>ARMANDO L.,<br><br>    Defendant and Appellant. | F069548<br><br>(Super. Ct. No. JW126221-04)<br><br>**OPINION** |

-ooOoo-

APPEAL from orders of the Superior Court of Kern County.  Peter A. Warmerdam, Juvenile Court Referee.

Robert McLaughlin, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Catherine Chatman and Michael Dolida, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Armando L., a minor, was adjudged a ward of the juvenile court in 2012 and 2013.  In 2014, he was continued as a ward under Welfare and Institutions Code sections 602

and 777 based on a finding that he violated Penal Code section 136.1, subdivision (a)(2) by attempting to prevent or dissuade a person from testifying in a legal proceeding. Pursuant to this finding, the juvenile court ordered him committed to the California Department of Corrections and Rehabilitation, Division of Juvenile Justice (DJJ). On appeal, the parties agree that the evidence presented at the contested jurisdictional hearing did not establish a violation of Penal Code section 136.1, subdivision (a)(2). Armando thus argues for reversal and asks to be released from custody.

Respondent submits that the evidence was sufficient to establish a violation of Penal Code section 136.1, subdivision (b)(1), i.e., attempting to prevent or dissuade a victim or witness from reporting a crime to police. Therefore, respondent argues, adjudicating the minor of a similar offense that carries the same punishment as the uncharged crime which he purportedly committed was a "technical error" that may be excused on grounds of inadvertence and lack of prejudice. We conclude that the error implicates the minor's constitutional rights and find the juvenile court acted in excess of its jurisdiction. Accordingly, we reverse the court's jurisdictional and dispositional orders.

## FACTUAL AND PROCEDURAL BACKGROUND

On March 5, 2014, the Kern County District Attorney filed a juvenile wardship petition under Welfare and Institutions Code sections 602 and 777 alleging four counts against the minor. The charge at issue was set forth in Count 2 as follows: "On or about March 3, 2014, Armando [L.], did willfully, knowingly and maliciously attempt to prevent or dissuade any witness or victim from attending or giving testimony at any trial, proceeding, or inquiry, in violation of Penal Code section 136.1(A)(2), a felony." The remaining counts alleged assault with a deadly weapon based on the throwing of rocks (Pen. Code,[1] § 245, subd. (a)(1); Count 1), criminal threats (§ 422; Count 3), and a

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

violation of pre-existing probation conditions (Welf. & Inst. Code, § 777, subd. (a)(2)). Through counsel, Armando entered a denial of the allegations in the petition. A contested jurisdictional hearing was held on March 27, 2014.

Prosecution Case

The prosecution called Enrique Hernandez as its complaining witness. Mr. Hernandez managed an apartment complex in Wasco where Armando and his younger brother frequently loitered, but did not reside. On the day in question, he saw the two brothers standing near the mailboxes of the complex smoking what appeared to be either marijuana or tobacco. Mr. Hernandez confronted the boys and asked them to leave the property. They initially refused, but departed after he threatened to call the police. This incident occurred at around 11:00 a.m.

Armando and his brother returned to the complex two or three hours later, this time accompanied by a female companion named Bella. Mr. Hernandez told the group to leave. Armando responded by throwing rocks at him. Mr. Hernandez retrieved a tree branch from his truck for protection. Armando also armed himself with a "stick" and allegedly threatened to hit the older man with it. However, when Mr. Hernandez began walking towards Armando, the boy "ran off and threw the stick away." Mr. Hernandez's grandson contacted the police while these events were happening. A sheriff's deputy subsequently detained Armando on a nearby street.

The prosecutor asked Mr. Hernandez, "At any point did they ever say not to call the police?" The witness replied, "Yeah, they told me many times not to call the police." Mr. Hernandez later clarified that such statements were made by Armando, but did not explain when the words were spoken or whether the statements were made before, after, or in conjunction with Armando's alleged threats and aggressive behavior. Towards the end of his direct examination, the witness claimed "they" had threatened him with death on the day of the incident. Mr. Hernandez also made vague references to vandalism which had occurred at the complex on unspecified dates, including someone writing the

3.

words "dead man" or "death" on a wall, but admitted that he did not know who was responsible for these acts.

Defense Case

Armando testified that he went to the complex with his friend Bella to meet up with another friend who lived there. While they were waiting for the friend to come out of her apartment, Mr. Hernandez confronted Armando and threatened to hit him with a hammer if he did not leave the property. Following a brief verbal exchange, Mr. Hernandez actually swung the hammer at Armando. Armando denied threatening the manager or throwing rocks at him. When Mr. Hernandez warned that he was going to call the police, Armando allegedly replied, "Go ahead." Bella provided testimony in support of Armando's version of the events.

Findings and Disposition

The juvenile court found that the charges of assault with a deadly weapon and criminal threats were not true. The allegations in Count 2 were found to be true beyond a reasonable doubt. Based on the true finding with respect to Count 2, the juvenile court further ruled that the probation violation alleged in Count 4 was proven by a preponderance of the evidence.

At the disposition hearing, the juvenile court determined that the Count 2 offense constituted a felony rather than a misdemeanor. The maximum period of confinement was set at four years and four months, less 432 days of credit for time served. The minor, then age 15, was thereupon ordered to be committed to the DJJ.

Armando filed motions for reconsideration with respect to the juvenile court's decision to treat the section 136.1, subdivision (a)(2) offense as a felony and its order of commitment to the DJJ. Both motions were denied. A timely notice of appeal was filed on June 5, 2014.

4.

## DISCUSSION

"Due process of law requires that an accused be advised of the charges against him; accordingly, a court lacks jurisdiction to convict a defendant of an offense that is neither charged in the accusatory pleading nor necessarily included in the crime alleged." (*In re Fernando C*. (2014) 227 Cal.App.4th 499, 502-503 (*Fernando C*.), citing *People v. Lohbauer* (1981) 29 Cal.3d 364, 369 (*Lohbauer*).)  These constitutional principles apply to juvenile court proceedings.  (*Fernando C*., *supra*, 227 Cal.App.4th at p. 503.)  In the same vein, a minor may not be adjudicated of a charged crime which he or she did not commit.  "[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged."  (*In re Winship* (1970) 397 U.S. 358, 364 [holding that juveniles are entitled to these due process protections when accused of a violation of criminal law].)

Armando claims there is no evidence to show he committed the crime with which he was charged, i.e., violating section 136.1, subdivision (a)(2), but he acknowledges that it is easy to infer the prosecution presented its evidence with the mindset of proving a violation of subdivision (b)(1) of the same code section.  Armando contends the prosecution's apparent intentions are irrelevant in light of the differences between the two crimes and the absolute nature of his due process rights.  Recognizing that Armando stands adjudicated of attempting to dissuade a witness from testifying in court, the Attorney General concedes that "there was no evidence presented at the hearing which even remotely suggested that appellant attempted to dissuade [Mr.] Hernandez from attending and testifying at the proceeding."  Nevertheless, she argues that because Armando must have realized the "true nature" of the charge in Count 2, he received adequate notice from which to prepare his defense and thus suffered no prejudice. Pursuant to this argument, respondent asks that we modify the judgment to reflect an adjudication of section 136.1, subdivision (b)(1) rather than subdivision (a)(2).

5.

We accept the concession regarding the insufficiency of the evidence to establish a violation of section 136.1, subdivision (a)(2). There are, however, several problems with respondent's position. Given the manner in which Count 2 was alleged, it is not possible to excuse the pleading deficiency as a mere clerical or technical error. Section 960 instructs that "[n]o accusatory pleading is insufficient, nor can the trial, judgment, or other proceeding thereon be affected by reason of any defect or imperfection in matter of form which does not prejudice a substantial right of the defendant upon the merits." Courts may therefore invoke section 960 to excuse references to the wrong code section in relation to an offense described in a charging document. (See *People v. Schueren* (1973) 10 Cal.3d 553, 558; *People v. Gerber* (2011) 196 Cal.App.4th 368, 388.) "'[T]he specific allegations of the accusatory pleading, rather than the statutory definitions of offenses charged, constitute the measuring unit for determining what offenses are included in a charge.'" (*People v. Thomas* (1987) 43 Cal.3d 818, 826 (*Thomas*).) Here, the petition not only cites to section 136.1, subdivision (a)(2), but also describes the offense using the same language found in that particular subdivision. There is no mention of the behavior proscribed by section 136.1, subdivision (b)(1). Regardless of whether or not the district attorney's office actually intended to charge Count 2 as pleaded, the minor was ultimately adjudicated of the violation described in the petition. The result implicates his constitutional right not to be held responsible for committing a crime unless the elements of the offense are proven beyond a reasonable doubt.

Even if we credit respondent's argument that the evidence was sufficient to establish a violation of section 136.1, subdivision (b)(1), the accompanying request for modification of the judgment is subject to jurisdictional and statutory restrictions. "'"When a defendant pleads not guilty, the court lacks jurisdiction to convict him of an offense that is neither charged nor necessarily included in the alleged crime."'" (*Thomas*, *supra*, 43 Cal.3d at p. 823; accord, *In re Robert G.* (1982) 31 Cal.3d 437, 445 (*Robert G.*).) On appeal, a reviewing court's power to modify the judgment is "purely

statutory." (*People v. Navarro* (2007) 40 Cal.4th 668, 678 (*Navarro*).) Under section 1260,[2] appellate courts may rely on substantial evidence in the record to modify a judgment to reflect the adjudication of a lesser included offense. (*Navarro, supra,* at p. 671.) However, section 1260 is "not a general license to modify verdicts in accordance with the evidence." (*People v. Eid* (2014) 59 Cal.4th 650, 659.) "A defendant may be convicted of an uncharged crime if, but only if, the uncharged crime is necessarily included in the charged crime." (*People v. Reed* (2006) 38 Cal.4th 1224, 1227 (*Reed*), citing § 1159 and *Lohbauer*, *supra*, 29 Cal.3d at pp. 368-369.) This is so "whether or not there was evidence at his trial to show that he had committed [the uncharged] offense." (*In re Hess* (1955) 45 Cal.2d 171, 175; see also, *In re Edward Q*. (2009) 177 Cal.App.4th 906, 910.) It follows that our ability to uphold the juvenile court's jurisdictional and dispositional orders depends on whether or not section 136.1, subdivision (b)(1) is a necessarily included offense within section 136.1, subdivision (a)(2).

"Two tests have traditionally been applied in determining whether an uncharged offense is necessarily included within a charged offense – the statutory or legal 'elements' test and the 'accusatory pleading' test." (*People v. Sloan* (2007) 42 Cal.4th 110, 117 (*Sloan*), italics omitted.) The elements test asks whether the statutory elements of the greater offense include all of the statutory elements of the lesser offense. (*Ibid*.) Put differently, "where an offense cannot be committed without necessarily committing another offense, the latter is a necessarily included offense." (*People v. Pearson* (1986) 42 Cal.3d 351, 355.) Under the accusatory pleading test, an uncharged offense is included within the charged offense if the facts alleged in the accusatory pleading include

---

[2] Section 1260 provides: "The court may reverse, affirm, or modify a judgment or order appealed from, or reduce the degree of the offense or attempted offense or the punishment imposed, and may set aside, affirm, or modify any or all of the proceedings subsequent to, or dependent upon, such judgment or order, and may, if proper, order a new trial and may, if proper, remand the cause to the trial court for such further proceedings as may be just under the circumstances."

all of the elements of the uncharged crime.  (*Sloan*, *supra*, 42 Cal.4th at p. 117.)  "Where the accusatory pleading, as in this case, tracks the statutory language rather than reciting factual details of the offense, 'only the statutory elements test is relevant in determining if an uncharged crime is a lesser included offense of that charged.'"  (*People v. Braslaw* (2015) 233 Cal.App.4th 1239, 1247, quoting *People v. Moussabeck* (2007) 157 Cal.App.4th 975, 981.)

To prove a violation of section 136.1, subdivision (a)(2), the prosecution must show that the accused "[k]nowingly and maliciously attempt[ed] to prevent or dissuade any witness or victim from attending or giving testimony at any trial, proceeding, or inquiry authorized by law."  In contrast, subdivision (b)(1) of the statute requires proof of an attempt to prevent or dissuade a person who has been the victim of a crime or who has witnessed a crime from "[m]aking any report of that victimization to any peace officer or state or local law enforcement officer or probation or parole or correctional officer or prosecuting agency or to any judge."  As noted in other appellate decisions, subdivision (b)(1) "targets pre-arrest efforts to prevent a crime from being reported to the authorities."  (*People v. Navarro* (2013) 212 Cal.App.4th 1336, 1347; accord, *People v. Fernandez* (2003) 106 Cal.App.4th 943, 950 (*Fernandez*) [reversing a § 136.1, sub. (b)(1) conviction because it was based solely upon the defendant's efforts to dissuade a victim from testifying truthfully at a preliminary hearing].)  Subdivision (a)(2), on the other hand, is logically construed as applying to post-arrest activity.  (*Fernandez*, *supra*, 106 Cal.App.4th at p. 948 ["neither lawyers nor laypeople are apt to characterize testimony by a witness in a criminal proceeding as a 'report.'"].)  The distinction was noted by our district in *People v. Hallock* (1989) 208 Cal.App.3d 595 (*Hallock*), where error was found in the use of an instruction on the elements of section 136.1, subdivision (a) when the defendant had been charged pursuant to subdivision (b).  (*Hallock, supra,* at pp. 606-607).

Subdivisions (a)(2) and (b)(1) of section 136.1 are accurately described as *related* offenses, but the elements of the latter are not necessarily included in the former. A person can violate subdivision (a)(2) without necessarily committing a violation of subdivision (b)(1), and vice versa. Therefore, the judgment cannot be modified to conform to proof as requested by respondent. Since the evidence is insufficient to establish the crime Armando was accused of committing, the true finding on Count 2 must be reversed.

The reversal of Count 2 invalidates the finding of a probation violation under Count 4. As pleaded, Count 4 was based solely upon "the commission of the offense(s) alleged in [the] petition." As discussed, two of the three offenses alleged in the petition were found not to be true. The count upon which the finding of a probation violation was based is being reversed for insufficient evidence, which means the adjudication of Count 4 cannot stand. These circumstances require dismissal of the petition. (See *In re A.L.* (2015) 233 Cal.App.4th 496, 499-500 [once the minor has entered a denial of the charges, the charging allegations cannot be amended without the minor's consent unless it is to allege a lesser/necessarily included offense]; *Robert G.*, *supra*, 31 Cal.3d at p. 445 ["a wardship petition under [Welf. & Inst. Code] section 602 may not be sustained upon findings that the minor has committed an offense or offenses other than one specifically alleged in the petition or necessarily included within an alleged offense, unless the minor consents to a finding on the substituted charge."].)

Armando's briefs contain additional arguments regarding the juvenile court's determination that the Count 2 conviction was a felony, and also its decision to commit him to the DJJ. These issues are rendered moot by our reversal of the orders from which the appeal is taken. Assuming there have been no subsequent adjudications or other legal proceedings which would independently authorize his continued commitment to the DJJ, the minor must be released from confinement.

## **DISPOSITION**

The true findings made in the jurisdictional order are reversed, as is the dispositional order.  The matter is remanded to the juvenile court with directions to dismiss the underlying petition.  We order that the minor be released from custody unless there is an independent legal basis for his continued confinement.


_____

GOMES, Acting P.J.

WE CONCUR:


_____

DETJEN, J.


_____

FRANSON, J.