Filed 9/3/24  In re W.M. CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re W.M., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>W.M.,<br><br>        Defendant and Appellant. | A165351<br><br>(Humboldt County<br>Super. Ct. No. JV2000117)<br><br>ORDER MODIFYING OPINON AND DENYING REHEARING; NO CHANGE IN JUDGMENT |

THE COURT:

It is ordered that the non-published opinion filed on August 1, 2024, be modified as follows:

1.  In the last paragraph before the "Disposition" section on page 11, after the last sentence in that paragraph, the following sentence is added:

> We also note the Attorney General's concession that it is appropriate for the juvenile court to reconsider the baseline term under current law.

2.  On page 12, footnote asterisk (*), "County of Alameda" is changed to "City and County of San Francisco."

There is no change in the judgment.

1

The August 16, 2024, petition for rehearing is denied.


Dated:  September 3, 2024                    BROWN, P. J.

Filed 8/1/24  In re W.M. CA1/4 (unmodified opinion)

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| In re W.M., a Person Coming Under the Juvenile Court Law. | |
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>W.M.,<br><br>        Defendant and Appellant. | A165351<br><br>(Humboldt County Superior  Ct. No. JV2000117) |

**MEMORANDUM OPINION**[1]

W.M. appeals from a dispositional order committing him to a secure youth treatment facility after a juvenile court sustained the petition as to two counts of attempted murder (Pen. Code, §§ 664, 187, subd. (a), counts 1 and 2), two counts of assault with a firearm (Pen. Code, § 245, subd. (a)(2), counts 3 and 4), and for violating a previous order of probation as contemplated by Welfare and Institutions Code section 777.  All of these counts were charged in a petition filed pursuant to Welfare and Institutions Code section 602.

---

[1] We resolve this case by memorandum opinion.  (Cal. Stds. Jud. Admin., § 8.1.)  We provide a limited factual summary because our opinion is unpublished, and the parties know or should know "the facts of the case and its procedural history."  (*People v. Garcia* (2002) 97 Cal.App.4th 847, 851.)

1

In the incident underlying the charges, W.M. was a passenger in a car whose driver stopped in front of a house, exited the car, and shot three times at a man named K.M. and his son. W.M. also got out of the vehicle during the altercation and fired one final shot before getting back in the car and riding away. In this appeal, he challenges the sufficiency of the evidence for all five charges and ascribes multiple errors to his sentencing. We conclude that no substantial evidence supports the attempted murder charge as to K.M.'s son (count 2), but we affirm the juvenile court's findings in all other respects, remanding the matter for W.M. to be resentenced accordingly.

## I. Substantial Evidence Supports the Finding That W.M. Was the Second Shooter

W.M. contends there is insufficient evidence to support the juvenile court's finding that he was the second shooter in the incident underlying counts 1 through 4. We disagree.

"In assessing a claim of insufficiency of evidence, the reviewing court's task is to review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence — that is, evidence that is reasonable, credible, and of solid value — such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.) "[U]nless the testimony is physically impossible or inherently improbable, testimony of a single witness is sufficient to support a conviction." (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)

Here, both victims identified W.M. as the second shooter in court, and nothing about that testimony entailed physical impossibility or inherent improbability. Nevertheless, W.M. seeks to undermine that testimony in various ways, such as highlighting discrepancies between his own

appearance and previous descriptions of the second shooter that were given to the police.  This argument amounts to a request that we reweigh the evidence, which is inappropriate on this standard of review.  It is not the task of a reviewing court "to resolve credibility issues or evidentiary conflicts." (*People v. Zaragoza* (2016) 1 Cal.5th 21, 44.)  Here, the juvenile court specifically and reasonably addressed the conflicts in the evidence cited by W.M. and determined that the witnesses who identified him were credible. We will not disturb that determination on appeal.

## II.    Substantial Evidence Supports Count 1, But Not Count 2

W.M. contends that the juvenile court's findings concerning the attempted murders charged in counts 1 and 2 are unsupported by substantial evidence.  We reject this contention with respect to count 1, the attempted murder of K.M.  But as to count 2, the attempted murder of K.M.'s son, we agree with W.M. that the juvenile court erroneously relied on the "kill zone" theory of concurrent intent, for which there was no substantial evidence.

"In reviewing a sufficiency of evidence claim, the reviewing court's role is a limited one.  ' "The proper test for determining a claim of insufficiency of evidence in a criminal case is whether, on the entire record, a rational trier of fact could find the defendant guilty beyond a reasonable doubt. [Citations.] On appeal, we must view the evidence in the light most favorable to the People and must presume in support of the judgment the existence of every fact the trier could reasonably deduce from the evidence. [Citation.]" ' " (*People v. Smith* (2005) 37 Cal.4th 733, 738–739.)

As a preliminary matter, we observe that although the juvenile court's explanation of its findings was not a model of clarity, it can be reasonably well understood in terms of its *structure*.  First, the juvenile court set forth the charges, noting that W.M. was "charged in counts one and two with the

3

attempt to commit murder . . . . Counts three and four [are] assault with a firearm . . . , and count five is your violation of probation." Then, the court addressed the evidence for those charges, in order. The court's discussion of aiding and abetting applied to count 1, an inference supported by the court's repeated use of singular nouns: "a crime," "the crime," "the criminal offense," "the offense," and "the attempt to commit murder." Then, after it had already found that the prosecution had proven count 1 on an aiding and abetting theory, the court invoked the kill zone theory when discussing how W.M. could be found liable with respect to multiple victims — a question raised by count 2. Finally, once it had dealt with counts 1 and 2, the court addressed the remaining counts, referring to them in order. As we explain below, there was substantial evidence for the juvenile court's finding that W.M. had aided and abetted the attempted murder of K.M. charged in count 1, but there was not substantial evidence for the kill-zone theory the court deployed to support the additional attempted murder charge regarding K.M.'s son.

### A. *Substantial Evidence Supports Count 1*

"[T]o be guilty of attempted murder as an aider and abettor, a person must give aid or encouragement with knowledge of the direct perpetrator's intent to kill and with the purpose of facilitating the direct perpetrator's accomplishment of the intended killing . . . ." (*People v. Lee* (2003) 31 Cal.4th 613, 624.) Addressing this theory, W.M. argues that there was insufficient evidence of an affirmative act that aided the driver in committing the attempted murder of K.M. (See *People v. Partee* (2020) 8 Cal.5th 860, 868, italics in original [" '[i]t is well settled that aiding and abetting the commission of a crime *require[s] some affirmative action*.' "].) We disagree.

Here, there was substantial evidence that W.M. committed the requisite affirmative act. After the driver jumped out of the car with his own

4

firearm, W.M. exited the vehicle seconds later as K.M. and his son approached the driver. W.M. stood near the rear of the car while the driver confronted the two victims. The fact that W.M. fired a gunshot over the roof of the car supports a reasonable inference that he was armed when he exited the vehicle.[2] Indeed, this is the only reasonable inference to be drawn under the circumstances, where both witnesses were standing only a few feet away from W.M. and were examined as to W.M.'s conduct, but never testified that W.M. returned to the car. As the People note, this evidence supports the conclusion that W.M. was acting as "back-up" for the driver during the attempted murder. In this sense, W.M. took " *'some affirmative action'* " to aid and abet the commission of the crime. (*People v. Partee, supra,* 8 Cal.5th at p. 868.)

For these reasons, we reject W.M.'s challenge to the sufficiency of the evidence for the aiding and abetting theory the juvenile court relied on in finding that W.M. had committed attempted murder as charged in count 1.

### B. The Juvenile Court's Reliance on a Kill-Zone Theory to Support Count 2 Was Reversible Error

"Attempted murder requires proof of a direct but ineffectual act done

---

[2] We do not conclude that W.M. firing his weapon *was* the affirmative act for the aiding and abetting — only that the fact of W.M.'s conduct in this regard is evidence that he was already armed when he exited the vehicle. For the same reason — because W.M.'s actus reus was performed before he fired his weapon — we do not rely on respondent's argument from *People v. Smith, supra,* 37 Cal.4th 733, 742, which held that "the act of purposefully firing a lethal weapon at another human being at close range, without legal excuse, generally gives rise to an inference that the shooter acted with express malice." Accordingly, we deny W.M.'s June 24, 2024, request for judicial notice concerning Penal Code section 188, subdivision (a)(3), which W.M. argues is relevant for the purpose of undercutting the argument from *Smith*.

5

towards killing another human being and the specific intent to unlawfully kill another human being. [Citation.] Unlike the mental state for murder, which does not require an intent to kill but only a conscious disregard for life (implied malice), ' "[a]ttempted murder requires the specific intent to kill. . . ." ' [Citation.] The doctrine of 'transferred intent,' transferring the intent to kill an intended target to an unintended victim, applies to murder but not to attempted murder." (*People v. Campos* (2007) 156 Cal.App.4th 1228, 1242.)

Here, in order to find that W.M. had attempted to murder K.M.'s son, the juvenile court expressly relied on the concurrent intent theory, which uses "circumstantial evidence to establish that the defendant acted with the specific intent to kill not only the primary target but also everyone in the kill zone." (*People v. Mumin* (2023) 15 Cal.5th 176, 193.) Having explained on the record the aiding and abetting theory of liability, the juvenile court applied that theory in combination with the "kill zone" theory, stating: "[E]ven though [W.M.] shot one time," because the "driver of the car, in fact, shot three times and [W.M.] aided and abetted him in those actions," there is "no reasonable doubt that" W.M. had intended to kill a principal target and that the other victim was within the kill zone.

We do not find it necessary to reach the question of whether the concurrent intent theory and the aiding and abetting theory may be so combined. (Cf. *People v. Canizales* (2019) 7 Cal.5th 591, 612, fn. 6.) In this case, it is dispositive that no substantial evidence supports the trial court's finding even under the assumption that such a combination is permitted.[3]

---

[3] Nor does it matter whether substantial evidence supports the juvenile court's finding as to count 2 under an aiding-and-abetting (or other) theory that does not invoke a kill zone. "When a jury has been instructed on both

Applying both theories simultaneously to the facts of this case would have required the juvenile court to find, in the words of the Attorney General, "that [W.M.] was aware of the driver's intent to create a zone of fatal harm that included" both the principal target and the other victim.

No substantial evidence supports a finding that W.M. had such an awareness. A kill zone requires the intent "to create a zone of fatal harm — that is, an area in which the defendant intended to kill everyone present *to ensure the primary target's death* — around the primary target." (*People v. Canizales*, *supra*, 7 Cal.5th at p. 597, italics added.) Here, according to the People, K.M. was the primary target. K.M. and his son were standing ten feet away from each other when the driver, who had exited his vehicle, fired three shots while standing six to eight feet away from K.M. and 10 feet away from K.M.'s son. But if K.M. was the primary target and the driver was standing a mere six to eight feet away, it makes no sense for the driver to have fired only three shots in order to create a 10-foot-wide kill zone

---

proper and improper theories for conviction, the appropriate standard of prejudice turns on the type of error involved." (*People v. Mumin*, *supra,* 15 Cal.5th at p. 207.) Generally speaking, the "verdict will be upheld [even] if there is insufficient evidence as to one of the theories." (*People v. Sandoval* (2015) 62 Cal.4th 394, 424.) "In such cases, where 'the inadequacy of proof' as to one of the theories . . . is 'purely factual,' it is presumed that the [trier of fact] is 'fully equipped to detect' the deficiency and must have relied on the other, factually valid theory." (*People v. Wear* (2020) 44 Cal.App.5th 1007, 1021.) "But this presumption does not apply if there is 'an affirmative indication in the record that the verdict actually did rest on the inadequate ground.'" (*Ibid*.) Here, although W.M. faced a bench trial and the error in question was not, strictly speaking, *instructional*, there was insufficient evidence to support the concurrent intent theory and the record bears an affirmative indication that the juvenile court's finding as to count 2 actually rested on that inadequate ground. For that reason, the juvenile court's erroneous reliance on the concurrent intent theory was reversible error. (*Id.* at p. 1022.)

(in which no one was killed) instead of simply firing at K.M. and K.M. alone. Creating such a kill zone would militate *against* "ensur[ing] the primary target's death."[4]  (*Canizales,* at p. 597.)

More importantly, there would be no reason for W.M. to infer from those three shots that the driver intended to create a kill zone.  Nor could a trier of fact reasonably draw such an inference from W.M.'s subsequent conduct: firing the single shot the juvenile court found him to have fired.  If W.M. believed that the driver intended to create a zone of fatal harm that included both K.M. and his son, then by the time W.M. fired his shot, he would have already seen that this endeavor had not only failed but was in the process of being abandoned by the driver, who was already getting back into the car.  A kill-zone plan could not be resuscitated by W.M.'s single shot, so it is not reasonable to infer that he fired that shot in order to execute such a plan.

Finally, there is no evidence from before the shooting to support the two-fold inference that the driver intended to create a kill zone and W.M. knew of that intent.  K.M.'s testimony was that he walked out of his house alone before throwing his baseball cap at the car speeding down the street. According to the same testimony, K.M. then watched the driver and W.M. exit the car and disappear into an apartment complex at the end of the street. At the time the driver and W.M. went into the apartment complex, they could not have known about K.M.'s son's presence because he had not yet come out

---

[4] Contrary to the Attorney General's argument, this analysis is only buttressed by the fact that the driver was standing so close to the victims during the shooting.  Geometry requires that if the driver had been firing from 100 to 160 feet away, as did the shooter in *Canizales, supra*, 7 Cal.5th at page 611, he would need to change the direction of his fire much less in order to hit the outermost points on the 10-foot-wide kill zone.

of the house.  Therefore, they could not have contemplated the creation of a kill zone at that time.  Nor is there any evidence that the driver and W.M. ever discussed killing K.M. and anyone else who was in the way.  Moreover, the driver pulled into the driveway next to K.M.'s residence and waited for K.M. and his son to approach the vehicle, instead of the driver pulling the vehicle right up to K.M. and his son outside their residence, jumping out with W.M., and firing immediately at both victims; this, too, weighs against a reasonable inference supporting the kill zone theory.

In sum, W.M. was found to have committed the attempted murder of K.M.'s son (count 2) on the theory that he aided and abetted the driver's creation of a kill zone.  Assuming for the sake of argument that such a theory is viable in principle, there is no substantial evidence to support it in the instant case.

### III.   There Was No Reversible Error Related to Count 5

W.M. contends that the probation violation in count 5 should not have been charged in a Welfare and Institutions Code[5] section 602 petition because such violations are properly "prosecuted through a notice provision under section 777 . . . ."  He further contends that there was insufficient evidence for the charge.  Although W.M. failed to make either argument below, the Attorney General apparently concedes that they may be raised on appeal, and we accept the concession.

Even so, W.M.'s claims concerning count 5 are meritless.  We may not reverse a judgment "for any error as to any matter of pleading . . . unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a

---

[5] All further statutory references are to the Welfare and Institutions Code.

miscarriage of justice." (Cal. Const., art. VI, § 13.) Here, the probation violation in count 5 was indeed charged as part of a section 602 petition, but our state has long permitted "unitary petition[s]" to initiate proceedings under both section 602 and section 777.[6] (*In re Michael B.*, *supra*, 28 Cal.3d at p. 554.) And although the pleading here did not expressly style itself as a unitary petition, its exposition of count 5 concluded: "Therefore, the court's previous [probation] orders are no longer effective for the protection or rehabilitation of [W.M.] and must be changed *in accord with section 777. . . .*" (Italics added.) Thus, W.M. had notice of the charge and its connection to section 777, so no miscarriage of justice resulted from whatever technical defect might be ascribed to the pleading in this regard. (See *People v. Thomas* (1987) 43 Cal.3d 818, 831 [reversal appropriate only where defendant has been misled to his detriment].)

Moreover, substantial evidence supports the juvenile court's finding. Count 5 alleged that by committing the crimes in "Count 1 through Count 4," W.M. had violated previous orders of probation which included the requirement to "obey all laws of the community. . . ." The juvenile court found beyond a reasonable doubt that W.M. committed those crimes, and although we have concluded that count 2 is unsupported by substantial evidence, we will affirm the judgment as to counts 1, 3, and 4, having rejected W.M.'s challenges to those counts. Because substantial evidence supports the findings that W.M. committed the crimes charged in counts 1, 3, and 4 — and

---

[6] In his reply, W.M. seems to imply that this practice is no longer allowed, saying that unitary petitions were "permitted prior to the passage of Proposition 21 in 2000." But he fails to support this implication with any authority or legal argument, and we see nothing in the current law that undercuts our Supreme Court's conclusion that the "filing of a unitary petition satisfies the essential demands of due process." (*In re Michael B.*, (1980) 28 Cal.3d 548, 554.)

thereby violated previous orders of probation — substantial evidence also supports the juvenile court's finding as to count 5.

## IV.    W.M. Should Be Resentenced

W.M. argues the juvenile court erred in committing him to a secure youth treatment facility, and in calculating his custody credits. He also contends his sentence includes an incorrect maximum term for the attempted murder charges and urges us to remand the matter to the juvenile court to consider a recent ameliorative change in the law concerning the baseline sentence for attempted murder. In light of our conclusion that count 2 is unsupported by substantial evidence, and the corollary that W.M. must be resentenced based on the remaining charges, we deem these arguments moot. For the benefit of the juvenile court, we note the Attorney General's concession that there was a custody credits error in the original disposition order, and that W.M.'s custody credits should have been calculated as of the date of that order.

## DISPOSITION

The juvenile court's findings are reversed as to count 2 and affirmed in all other respects. The matter is remanded for resentencing on the remaining counts.

11

HITE, J.*

We concur:

BROWN, P. J.
STREETER, J.

*In re W.M.* (A165351)

* Judge of the Superior Court of California, County of Alameda, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.