Filed 9/30/22 P. v. Orona CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C092484 |
| Plaintiff and Respondent, | (Super. Ct. No. 93F08242) |
| v. | |
| FRANCISCO ORONA, | |
| Defendant and Appellant. | |

In 1996, defendant Francisco Orona pled no contest to second degree murder and admitted that he was armed with a knife during the offense. He was sentenced to an indeterminate term of 15 years to life plus one year for the arming enhancement. This appeal arises from the trial court's denial of his petition for resentencing under former Penal Code section 1170.95.[1]

---

[1] Further undesignated statutory references are to the Penal Code. Effective June 30, 2022, former section 1170.95 was recodified without substantive change to section

1

By relying on facts stated in the preliminary hearing transcript in the absence of any stipulation from him that the facts supplied a basis for his plea, as well as facts stated in our opinion in *People v. Oquendo* (Sept. 27, 1999, C026864 & C026866) [nonpub. opn.] (*Oquendo*), which involved two of his codefendants who were convicted of first degree murder by two separate juries following his plea, defendant contends the trial court erroneously concluded that he failed to make a prima facie showing of entitlement to relief. He contends the trial court should have issued an order to show cause and held an evidentiary hearing on the merits of his petition.[2]

We agree that the trial court engaged in impermissible factfinding based on the preliminary hearing transcript and our decision in *Oquendo* at the prima facie stage of review. Furthermore, on the present record, we cannot say that defendant's own record of conviction, including his plea colloquy and the stipulated factual basis for his plea, show as a matter of law that he pled no contest as a direct aider and abettor rather than under a theory of indirect aider and abettor liability. We therefore reverse the trial court's order denying defendant's resentencing petition and remand for the trial court to issue an order to show cause and conduct further proceedings under former section 1170.95 to determine whether resentencing is warranted.

---

1172.6. (Stats. 2022, ch. 58, § 10.) In this opinion, we shall continue to refer to this section as former section 1170.95 for purposes of clarity and conformity with the petition.

[2] Defendant also argues in the alternative that the trial court improperly denied his petition on the merits. Because the record shows the trial court denied his petition without holding a hearing after receiving briefing from the parties that disputed whether defendant had made a prima facie case for relief, we conclude the court denied the petition at the prima facie stage, and we do not address defendant's alternative merits argument further.

# I. BACKGROUND

Together with codefendants Enrique Oquendo, Jose Oquendo, and Jesus Jesse Orona, defendant was charged with the murder of Apolinar Martinez (§ 187). The consolidated, amended information alleged the murder charge generically, asserting that defendants committed the murder "unlawfully, and with malice aforethought." It was further alleged that defendant and his cohorts were principals in the offense and that one or more principals were armed with a firearm (§ 12022, subd. (a)(1)), and that all defendants personally used a deadly and dangerous weapon, a knife, during the commission of the crime. A special circumstance for lying in wait was also alleged (§ 190.2, subd. (a)(15).

On the date set for jury selection, defendant and codefendant Jose Oquendo each pled no contest to second degree murder and admitted a related enhancement of being armed with a knife (§ 12022, subd. (b)) in exchange for dismissal of the remaining allegations.

During the change of plea hearing, the trial court stated: "Now, by pleading guilty to second degree murder, it would appear to me that a Defendant is admitting either inflicting a wound that contributed to the death of the individual with malice aforethought but without being willful, deliberate and premeditated. The difference between the first degree murder and second degree murder being the elements of premeditation. It would be the intentional killing of a human being without deliberation and premeditation or, as an alternative, a defendant could be admitting that that person aided and abetted in the commission of the homicide, the killing of the individual."

The court then explained, "And aiding and abetting is that one provides assistance or encouragement in the commission of the crime and does so with the intent to—with knowledge of what is occurring by way of inflicting great bodily harm upon the individual and with the intent to aid and assist in that process."

3

Following the court's explanation, it asked, "[Codefendant Oquendo's counsel], is your client entering his plea on one of those theories, or is there some other theory by which this would be second degree murder, that you consider appropriate or factually based in this case?" Oquendo's counsel responded, "I would say, for purposes of the plea, is that the aiding and abetting theory would apply." The court then posed the same question to defendant's counsel, who replied, "I would say the same, but I think they are going to plead no contest."

In response to counsels' representations, the court stated: "So they are not making an express admission, but I do want to understand and have on the record, so they understand, what the effect of the plea is, and what, in a sense is being acknowledged by a plea of no contest."

The court then asked defendant if he understood the charge made against him, and defendant responded that he did. The court also asked if defendant understood that if he pled no contest to the charge of second degree murder, that meant, from his no contest plea, that the court would conclude that defendant either caused the death of Martinez or that he assisted knowingly and intentionally in the acts that caused his death. Defendant confirmed that he understood.

Later during the hearing, the court asked, "What is the proposal as to addressing the factual basis in this case?" Although the court had learned, in discussions with counsel, a considerable amount of evidence in the case, the court acknowledged that it had "not read the preliminary hearing transcripts, only portions thereof." The court then asked the prosecutor to set forth a factual basis for the plea. The prosecutor provided the following factual basis: "On the date stated in the Information, in the County of Sacramento, the defendants Jose Oquendo and Francisco Orona went with several individuals to the home of Apolinar Martinez. The defendants, absent provocation and without premeditation and deliberation, did aid and abet in the death of Apolinar Martinez. Both defendants were armed with a knife." The court added that, at one point,

4

the victim was bound by his hands with tape, and he was found with tape covering his mouth with multiple stab wounds, and also that the victim had been shot, although the bullet wound was not fatal.

After the prosecutor's factual basis as supplemented by the court, the court asked counsel for both defendants whether they wished to add to, correct, or comment on the factual basis. Both stated: "Not at this time."

Defendant's counsel later acknowledged that he had discussed the nature of the crime of murder with defendant, including the difference between first and second degree murder as well as manslaughter, and had also discussed "the elements or the aspect of responsibility that applies to a person who aids and assists in the commission of the crimes." Defendant confirmed that he had had such conversations with his counsel and that he understood those general principles.

The court accepted defendant's subsequent no contest plea to second degree murder and his admission to being armed with a knife during the commission of the offense, which was related to the original allegation of personally using a knife during the offense. He was sentenced to 15 years to life with the possibility of parole, plus one year for the arming enhancement.

The two codefendants who did not plead no contest before trial, Enrique Oquendo and Jesus Jesse Orona, were later convicted by two separate juries of first degree murder with various weapon enhancements. This court affirmed their convictions on appeal in *Oquendo, supra,* C026864 & C026866 .

In February 2019, defendant filed a petition for resentencing under former section 1170.95, which was enacted as part of Senate Bill No. 1437 (2017-2018 Reg. Sess.) (Stats. 2018, ch. 1015; Senate Bill 1437). The petition alleged that: (1) a complaint, information, or indictment was filed against him that allowed the prosecutor to proceed under a theory of felony murder or murder under the natural and probable consequences doctrine; (2) he pled no contest to second degree murder in lieu of going to trial because

5

he believed he could have been convicted at trial of first or second degree murder pursuant to the felony-murder rule or the natural and probable consequences doctrine; and (3) he could not now be convicted of first or second degree murder because of changes made to sections 188 and 189, effective January 1, 2019.

Defendant's petition also checked boxes stating he was not the actual killer, he did not, with the intent to kill, aid, abet, counsel, command, induce, solicit, request, or assist the actual killer in the commission of murder in the first degree, and that he was not a major participant in the felony or did not act with reckless indifference to human life during the course of the crime or felony. Defendant also checked boxes stating that he was convicted of second degree murder under the natural and probable consequences doctrine or under the second degree felony-murder doctrine, and that he could not now be convicted of murder because of changes to section 188, effective January 1, 2019, and that there had been a prior determination by a court or jury that he was not a major participant and/or did not act with reckless indifference to human life under section 190.2, subdivision (d).[3] Defendant requested the appointment of counsel on his resentencing petition.

The court appointed defendant counsel and obtained briefing from the parties. The People moved to dismiss defendant's petition, arguing that Senate Bill 1437 was unconstitutional and that defendant had failed to state a prima facie case because he was convicted under a theory that he was a direct aider and abettor to the murder, which indicated that the jury found defendant acted with intent to kill thereby rendering him

---

[3] Nothing in the record before us shows that either a previous court or a jury made a determination that defendant was not a major participant or did not act with reckless indifference to human life.

ineligible for relief as a matter of law.[4] Defendant, however, was never tried before a jury as he pled no contest prior to trial.

Defendant's appointed counsel filed a responsive brief arguing his petition satisfied the low prima facie burden under former section 1170.95. Counsel did not specifically address the People's argument that defendant had been convicted as a direct aider and abettor to murder.

Without holding a hearing, the trial court denied the petition in a written decision on May 20, 2020. After reviewing the court file, which the court described as including the transcripts of the preliminary hearing and defendant's change of plea, and a copy of his codefendants' unpublished appellate opinion, the court concluded that defendant was convicted as an aider and abettor and was thus ineligible for resentencing under former section 1170.95.

The court's written decision included the statement of facts contained in this court's unpublished opinion in *Oquendo*, which was issued after defendant had already pled no contest and was no longer involved in the trial. The court found that the factual recitation in *Oquendo* "align[ed] with the preliminary hearing testimony of one of the detectives that investigated the case." According to the court, the detective testified at the preliminary hearing that defendant told him the victim had been bound, but when the victim started to get up, defendant stabbed the victim on the right side and stomach at least three times, and that defendant had said his codefendants also stabbed the victim and that one of the codefendants shot the victim, but he could not be sure which one.

In denying the petition, the court emphasized that the consolidated and amended information charged defendant and his codefendants with a single count of murder with malice aforethought. The information, according to the court, did not allege a felony-

---

[4] The People do not raise the constitutional argument on appeal.

7

murder special circumstance under section 190.2, subdivision (a)(17), nor did it allege a target felony that would underlie a felony-murder theory. The court found that the change of plea transcript made clear that defendant pled no contest as an aider and abettor, but the court did not specify whether he pled no contest as a direct aider and abettor to implied malice murder or as an indirect aider and abettor under the natural and probable consequences doctrine. The court also found that the "[i]nformation plainly state[d] [defendant] was charged as an aider and abettor[,]" "lack[ed] a special allegation related to felony-murder[,] and [it] provide[d] no indication the People could have proceeded under the natural and probable consequences doctrine." Finally, the court reasoned that "defendant's conduct, as was presented at the preliminary hearing and the trial of his codefendant[s], which included inflicting the first stab wound upon the victim, is clearly that of, at least, an aider and abettor." The court thus denied defendant's petition, finding that he did not qualify for relief under Senate Bill 1437. Defendant timely appealed.

## II. DISCUSSION

A. *Senate Bill Nos. 1437 and 775*

On September 30, 2018, the Governor signed Senate Bill 1437. This bill was enacted to "amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1, subd. (f).) Thus, Senate Bill 1437 amended sections 188 and 189, effective January 1, 2019, to, among other things, "eliminate[] natural and probable consequences liability for murder regardless of degree." (*People v. Gentile* (2020) 10 Cal.5th 830, 848, abrogated on other grounds by statute as stated in *People v. Birdsall* (2022) 77 Cal.App.5th 859, 866, fn. 19.)

8

Senate Bill 1437 also authorized (by adding former section 1170.95) an individual convicted of felony murder or murder based on the natural and probable consequences doctrine to petition the sentencing court to vacate the conviction and be resentenced on any remaining counts if they could not have been convicted of murder because of Senate Bill 1437's changes to the definition of the crime. (*People v. Gentile, supra*, 10 Cal.5th at p. 843.) Trial courts first review the petition to determine whether it has been properly completed and then determine whether the petitioner has made a prima facie case for relief. (Former § 1170.95, subds. (b), (c).) If a prima facie case is made, the trial court issues an order to show cause and holds an evidentiary hearing to determine whether to vacate the conviction and recall the sentence. (Former § 1170.95, subd. (d).)

In *People v. Lewis* (2021) 11 Cal.5th 952, our Supreme Court set forth the appropriate procedure as follows: "[A] complying petition is filed; the court appoints counsel, if requested; the issue is briefed; and then the court makes one (not two) prima facie determination." (*Id.* at p. 966.) The court also held that the failure to appoint counsel was error under state statutory law; accordingly, "a petitioner 'whose petition is denied before an order to show cause issues has the burden of showing "it is reasonably probable that if [he or she] had been afforded assistance of counsel his [or her] petition would not have been summarily denied without an evidentiary hearing." ' " (*Id.* at p. 974.)

Senate Bill No. 775 (2020-2021 Reg. Sess.) (Stats. 2021, ch. 551; Senate Bill 775) was signed into law on October 5, 2021, and codified *Lewis*'s holding "regarding petitioners' right to counsel and the standard for determining the existence of a prima facie case." (Stats. 2021, ch. 551, § 1, subd. (b).) Specifically, former section 1170.95 now explicitly requires appointment of counsel on receipt of a properly completed petition requesting counsel, and then: "Within 60 days after service of a petition that meets the requirements set forth in subdivision (b), the prosecutor shall file and serve a response. The petitioner may file and serve a reply within 30 days after the prosecutor's

9

response is served. These deadlines shall be extended for good cause. After the parties have had an opportunity to submit briefings, the court shall hold a hearing to determine whether the petitioner has made a prima facie case for relief. If the petitioner makes a prima facie showing that the petitioner is entitled to relief, the court shall issue an order to show cause. If the court declines to make an order to show cause, it shall provide a statement fully setting forth its reasons for doing so." (Former § 1170.95, subd. (c).) These modifications to former section 1170.95 apply retroactively to defendant because his case is not yet final. (*People v. Porter* (2022) 73 Cal.App.5th 644, 652.)

In making the required prima facie determination under former section 1170.95, subdivision (c), *Lewis* explains that "the 'prima facie burden was intentionally and correctly set very low.' " (*Lewis, supra*, 11 Cal.5th at p. 972.) Thus, the trial court's inquiry is limited. (*Id.* at p. 971.)

The trial court must take a petitioner's " ' "factual allegations as true and make a preliminary assessment regarding whether the petitioner would be entitled to relief if his or her factual allegations were proved." ' " (*Lewis, supra*, 11 Cal.5th at p. 971.) If so, the trial court must issue an order to show cause and hold an evidentiary hearing. (*Ibid.*) " '[A] court should not reject the petitioner's factual allegations on credibility grounds without first conducting an evidentiary hearing.' " (*Ibid.*) While a trial court may consider the record of conviction in making the prima facie assessment at this preliminary juncture, "a trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion.' " (*Id.* at p. 972.) *Lewis* cautioned, moreover, that although appellate opinions are generally considered to be part of the record of conviction, the probative value of an appellate opinion is case-specific and it may not supply all answers. (*Ibid.*)

B.    *Murder Liability After Senate Bill 1437*

Generally, a person may be liable for a crime as a direct perpetrator or as an aider and abettor. (§ 31.) An aider and abettor can be held liable for crimes that were

intentionally aided and abetted (target offense), and for any crimes that were not intended but were reasonably foreseeable (nontarget offense). (*People v. Laster* (1997) 52 Cal.App.4th 1450, 1462-1463.) Liability for intentional, target offenses is known as "direct" aider and abettor liability. (*People v. Montes* (1999) 74 Cal.App.4th 1050, 1055.) Liability for unintentional, nontarget offenses is known as the " ' "natural and probable consequences" doctrine.' " (*Ibid.*; see also *People v. McCoy* (2001) 25 Cal.4th 1111, 1117 ["an aider and abettor's liability for criminal conduct is of two kinds: First, an aider and abettor with the necessary mental state is guilty of the intended crime. Second, under the natural and probable consequences doctrine, an aider and abettor is guilty not only of the intended crime, but also 'for any other offense that was a "natural and probable consequence" of the crime aided and abetted' "].)

Although an accomplice can no longer be convicted of murder[5] under a natural and probable consequences theory following the passage of Senate Bill 1437, an accomplice can still be convicted of murder as a direct aider and abettor. (§§ 188, 189.) Under a direct aider and abettor liability theory, the prosecution must prove the person who is not the actual killer "engaged in the requisite acts and had the requisite intent" to aid and abet the target crime of murder. (*People v. Duchine* (2021) 60 Cal.App.5th 798, 815.) A direct aider and abettor's "guilt is based on a combination of the direct perpetrator's acts and the aider and abettor's *own* acts and *own* mental state." (*People v. McCoy*, *supra*, 25 Cal.4th at p. 1117.)

C.    *Analysis*

Defendant contends the trial court improperly relied on facts not clearly established as a matter of law from the record of conviction in finding he failed to make the requisite prima facie showing under former section 1170.95, subdivision (c). In

---

[5] "Murder is the unlawful killing of a human being . . . with malice aforethought." (§ 187.)

11

defendant's view, had the court relied only on those facts he clearly admitted during his plea colloquy and recognized that there are two possible theories of aiding and abetting second degree murder, one of which involved the natural and probable consequences doctrine—it would have found he had made a sufficient prima facie showing to issue an order to show cause.

The parties agree that to the extent the trial court engaged in fact finding at the prima facie stage based on the preliminary hearing transcript and this court's opinion in *Oquendo*, the court erred. We concur.

Defendant did not stipulate to or admit the transcript of his preliminary hearing as the factual basis for his plea. Thus, the court erred in considering facts from the preliminary hearing transcript that he had no opportunity to challenge when assessing defendant's prima facie showing. (See e.g., *People v. Davenport* (2021) 71 Cal.App.5th 476, 481-482 [although preliminary hearing may be part of record of conviction, the court erred in considering facts from the preliminary hearing transcript because the defendant did not stipulate to the transcript as a factual basis for his plea to second degree murder]; *People v. Cooper* (2020) 54 Cal.App.5th 106, 109-110, 112-113, review granted Nov. 10, 2020, dismissed Dec. 15, 2021, S264684 [trial court erroneously ruled that the defendant was ineligible for relief as a matter of law because the court's ruling was based on impermissible factfinding that accepted the truth of the preliminary hearing transcript when the defendant did not stipulate to the preliminary hearing transcript as the factual basis for his second degree murder plea].) As *Cooper* noted, there is a difference between a probable cause determination to believe a defendant committed a felony made by a magistrate at a preliminary hearing and a determination at trial of guilty beyond a reasonable doubt. (*Cooper, supra*, at p. 123.) " ' "In short, *the magistrate is not a trier of fact*," ' and a ruling holding a defendant to answer is in no way equivalent to a jury's factual finding or a defendant's admission." (*Id.* at p. 124.)

12

And while we agree that a prior appellate opinion can constitute a part of the record of conviction for a party to the appeal that a court may consider at the prima facie stage after receiving briefing from the parties (*Lewis, supra*, 11 Cal.5th at p. 972 [appellate opinions are generally considered to be part of the record of conviction, although an appellate opinion might not supply all answers]; *People v. Woodell* (1998) 17 Cal.4th 448, 454-455), we do not believe the *Oquendo* decision is part of *defendant's record of conviction* here. (*People v. Flores* (2022) 76 Cal.App.5th 974, 982, 987-988 [appellate court's decision in codefendant's direct appeal was not part of the record of conviction in the defendant's case where the defendant pled guilty prior to trial].) Defendant was not a party to the *Oquendo* appeal as he pled no contest before trial. Thus, any facts from the *Oquendo* opinion that the court relied on to support its interpretation of the preliminary hearing testimony and as a basis for denying the petition was error. (*Lewis, supra,* at p. 972 [prima facie inquiry under former section 1170.95 is limited and "trial court should not engage in 'factfinding involving the weighing of evidence or the exercise of discretion' "].)

On this record, we do not find that these errors are harmless. Given the generic nature of the charging document in defendant's case, plus the imprecise nature of defendant's own plea colloquy, we cannot conclude as a matter of law that defendant failed to make the requisite prima facie showing under former section 1170.95.

As defendant points out, the amended and consolidated information here charged murder generically thereby allowing the prosecutor to proceed on *any* theory of murder, including felony murder and murder under the natural and probable consequences doctrine. (See e.g., *People v. Thomas* (1987) 43 Cal.3d 818, 829, fn. 5 ["it has long been the law in this state that an accusatory pleading charging murder need not specify degree or the manner in which the murder was committed]; *People v. Contreras* (2013) 58 Cal.4th 123, 147 [accusatory pleading need not "specify the theory of murder on which the prosecution relies at trial"]; *People v. Davenport, supra*, 71 Cal.App.5th at p. 484 [an

information alleging that a murder was committed willfully, unlawfully, and with malice aforethought is a well-recognized way of charging the offense of murder in a generic sense].) Thus, the trial court erred in finding that the amended, consolidated information was insufficient to proceed on a theory of felony murder or murder under the natural and probable consequences doctrine.

Indeed, this court's decision in *Oquendo* makes clear that the trial court instructed the juries for the two codefendants on assault with a deadly weapon and misdemeanor battery even though the amended consolidated information, in which defendant was also charged and to which he pled no contest, does not appear to allege those target offenses separately. The trial court in *Oquendo* also instructed on the felony murder rule, and on aiding and abetting principles based on the natural and probable consequences doctrine even though these theories were not expressly set forth in the information. Moreover, the *Oquendo* court found on appeal that "[t]he evidence establishes such a killing was a reasonably foreseeable consequence of the armed assault on Martinez." Contrary to the trial court's conclusion, then, felony murder and the natural and probable consequences doctrine were theories under which defendant could potentially have been convicted of murder had he gone to trial like his codefendants.

Furthermore, although the sentencing court attempted to pinpoint the theory of liability underlying defendant's plea at the change of plea hearing, we find that the court's less than clear explanation coupled with the stated factual basis to which defendant pled, are insufficient to establish *as a matter of law* that defendant pled no contest as a direct aider and abettor to implied malice murder with the requisite mental state. (See e.g., *People v. Powell* (2021) 63 Cal.App.5th 689, 713 ["to be liable for an implied malice murder, the direct aider and abettor must, by words or conduct, aid the commission of the life endangering *act*, not the result of that act. The mens rea, which must be personally harbored by the direct aider and abettor, is knowledge that the perpetrator intended to commit *the act*, intent to aid the perpetrator in the commission of

14

*the act*, knowledge that *the act* is dangerous to human life, and acting in conscious disregard for human life"].)

Before accepting defendant's plea, the court asked if defendant was pleading guilty to second degree murder under the theory that (1) he "inflicted[ed] a wound that contributed to the death of the individual with malice aforethought but without being willful, deliberate and premeditated," or (2) he "aided and abetted in the commission of the homicide, the killing of the individual." However, the court then explained that "aiding and abetting is that one provides assistance or encouragement in the commission of the crime and does so with the intent to—with knowledge of what is occurring by way of inflicting great bodily harm upon the individual and with the intent to aid and assist in that process."

We agree with defendant that, at this stage, the only readily ascertainable fact that can be gleaned from the court's latter statement is that he admitted providing assistance or encouragement with knowledge that his acts could inflict great bodily harm, but not that he necessarily knew that his conduct endangered the life of another and nonetheless acted with conscious disregard for life. (*People v. Gentile, supra,* 10 Cal.5th at p. 850; *People v. Powell, supra,* 63 Cal.App.5th at p. 713.) Nor does the court's subsequent statement asking whether defendant understood that his no contest plea would mean he either caused Martinez's death or that he assisted knowingly and intentionally in the acts that caused his death show, as a matter of law, that defendant harbored the necessary mens rea for directly aiding and abetting implied malice murder rather than indirectly aiding and abetting an intended assault on the victim, the reasonably foreseeable consequence of which was his murder.

The prosecutor's stated factual basis also does not definitively resolve the issue of the type of aiding and abetting to which defendant pled. The prosecutor recounted only that defendant, without provocation, premeditation, and deliberation, aided and abetted in Martinez's death while armed with a knife. Again, at this early prima facie stage, nothing

15

in the record of conviction shows conclusively as a matter of law that defendant pled no contest as a direct aider and abettor to second degree murder rather than an indirect one under the natural and probable consequences doctrine, or that he possessed the requisite mental state for direct aider and abettor liability.

The fact that neither the court nor defendant's counsel identified a specific target crime such as assault during the plea colloquy does not persuade us that the record of conviction shows as a matter of law that defendant pled no contest on a direct aider and abettor theory. As previously noted, the information charged the murder generically, which would have allowed the prosecution to proceed on any theory of murder, including one based on indirect aider and abettor liability under the natural and probable consequences doctrine. (*People v. Thomas, supra*, 43 Cal.3d at p. 829, fn. 5 [an accusatory pleading charging murder is not required to specify the degree or theory of murder on which the prosecution relies at trial].)

Similar to *Cooper,* where the basis of the defendant's plea could not be ascertained (*Cooper, supra*, 54 Cal.App.5th at pp. 109-110), the precise basis for defendant's plea here cannot be ascertained as a matter of law at this stage in the proceedings. The trial court therefore erred in engaging in improper factfinding when concluding defendant had failed to make a sufficient prima facie showing under former section 1170.95, subdivision (c).

We conclude defendant adequately alleged a prima facie claim for relief and the record does not rebut his allegations as a matter of law. The trial court was required to issue an order to show cause (former § 1170.95, subd. (c)), and to hold a hearing at which the prosecution bears the burden of proving defendant's ineligibility for resentencing beyond a reasonable doubt, unless such a hearing is waived (former § 1170.95, subd. (d)). In failing to do so, the court erred. Accordingly, we will reverse and remand for further proceedings. We express no opinion on the merits of defendant's petition.

16

### III. DISPOSITION

The order denying defendant's petition for resentencing under former section 1170.95 is reversed. On remand, the trial court is directed to issue an order to show cause and to conduct further proceedings as required under former section 1170.95, subdivision (d).[6]

/S/

_____

RENNER, J.

We concur:

/S/

_____

HOCH, Acting P. J.

/S/

_____

KRAUSE, J.

_____

[6] We also note a potential error in the abstract of judgment. The abstract of judgment reflects that defendant was convicted of a firearm enhancement under section 12022, subdivision (a)(1). The limited record before us, however, shows that during the plea hearing, defendant pled no contest to second degree murder and admitted being "armed" with a knife as a related enhancement to a charged enhancement under section 12022, subdivision (b) for personally using a knife during the offense; the trial court did not specify the applicable statute for what defendant actually admitted as part of his plea. Given the incomplete record and the narrow issue presented by this appeal, the parties may wish to address the potential error upon remand.