Filed 1/26/23

<u>**CERTIFIED FOR PARTIAL PUBLICATION**</u>*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CARLOS ALFONSO BOLANOS,<br><br>    Defendant and Appellant. | F082970<br><br>(Super. Ct. No. MCR063072)<br><br><br>**OPINION** |

APPEAL from a judgment of the Superior Court of Madera County.  Mitchell C. Rigby, Judge.

Jean M. Marinovich, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Ross K. Naughton, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Carlos Alfonso Bolanos was 22 years old when he committed various sex crimes for which he was sentenced to serve, inter alia, multiple life in prison *without* parole and multiple life in prison *with* parole terms.  These sentences were based on the One Strike

---

* Pursuant to California Rules of Court, rules 8.1105(b) and 8.1110, this opinion is certified for publication with the exception of sections IV, V, VI, and VII.

law (Pen. Code,[1] § 667.61). On an unrelated occasion, he stole a car and was convicted for its theft.

On appeal, Bolanos makes several claims, mostly related to sentencing. Primarily, he suggests the youthful offender parole scheme—which excludes people sentenced under the One Strike law, and people sentenced to life without parole for crimes committed as adults—violates equal protection. (See § 3051, subd. (h).) The People dispute any equal protection violation.

Second, Bolanos complains the court erred in pronouncing one of the life in prison with parole terms. The People concede, but the parties diverge on the appropriate remedy. Their disagreement centers on due process and notice.

Third, Bolanos contends the trial court should have stayed some of the One Strike sentences pursuant to section 654, which generally prohibits multiple punishment for a single act. The People disagree.

In the published portion of this opinion, we find against Bolanos on these three issues. In the unpublished portion, we address his remaining contentions—which we further detail below. Ultimately, we will reverse the car theft conviction for insufficient evidence, direct the court to stay certain other sentences, and remand for resentencing. The judgment, including the life without parole terms, is otherwise affirmed.

## BACKGROUND

**Charges**

The Madera County District Attorney charged Bolanos with numerous crimes and special allegations. The following crimes were charged: forcible rape (§ 261, subd. (a)(2); Counts 1 & 2), forcible oral copulation of a minor (§ 287, subd. (c)(2)(C); Count 3), aggravated kidnapping (§ 209, subd. (b)(1); count 4), forcible oral copulation (§ 287, subd. (c)(2)(A); Count 5), criminal threats (§ 422, subd. (a); Count 6), false

---

[1] Undesignated statutory references are to the Penal Code.

2.

imprisonment (§ 236; Count 7), vehicle theft (Veh. Code, § 10851, subd. (a); Count 8), and grand theft automobile (§ 484/487, subd. (d)(1); Count 9).

The District Attorney alleged the following special allegations: aggravated kidnapping in Counts 1, 2, and 3 (§ 667.61, subds. (*l*) & (d)(2)), aggravated kidnapping in Counts 1, 2, and 3 (§ 667.61, subds. (a) & (d)(2)), kidnapping in Counts 1, 2, and 3 (§ 667.61, subds. (a) & (e)(1)), kidnapping in Count 5 (§ 667.61, subds. (b) & (e)(1)),[2] and multiple victims (§ 667.61, subds. (a) & (e)(4)).

**Trial Evidence**

There are three victims in this case. We will summarize the evidence relative to each victim in the order presented at trial. In each incident, Bolanos used his "girlfriend" or a fake Facebook[3] profile to contact the victim. The fake profile was named "Maritza Martinez" and depicted a "Mexican" "teenage girl …."[4]

Victim One: Counts 1 through 4 (forcible rape, forcible oral copulation, kidnapping)

Victim one agreed to meet Maritza Martinez for a job. At the last minute, victim one was told Bolanos would meet her instead and he indeed showed up in a van. Victim one entered, believing she would help sell fruit. Bolanos drove her down the street and then forced her to perform oral sex. He then drove her to a second location, raped her, took her back to the first location, and then raped her again. To accomplish the acts, Bolanos verbally threatened the victim with a weapon.[5]

Victim Two: Counts 5 through 7 (forcible oral copulation, criminal threats, false imprisonment)

---

[2] The basis for this special allegation is subject to some debate and discussed further below.

[3] Facebook is a "social media service provider[] …." (*Facebook, Inc. v. Superior Court* (2018) 4 Cal.5th 1245, 1248.)

[4] Victim one provided the Maritza Martinez description at the trial.

[5] Bolanos did not display a weapon during the threats.

Victim two agreed to meet her friend at the friend's home, a trailer.[6] Her friend was in a relationship with Bolanos. When victim two arrived at the trailer, she hesitated to enter and remained outside until Bolanos approached and "told [her] go in" because her friend "was in there." After she complied by entering, Bolanos told her her friend was not home. Victim two tried to leave but Bolanos blocked the door, held a knife to her "stomach," threatened to "stab her," and forced her to perform oral sex.

Victim Three: Counts 8 and 9 (vehicle theft, grand theft automobile)

Victim three agreed to sell her car to Maritza Martinez. At the last minute, victim three was told Bolanos would meet her instead. Bolanos showed up, test drove the car, and then victim three signed over the "pink slip …." After signing over the "pink slip," Bolanos handed victim three fake money concealed in an envelope. Victim three exited the car, ultimately realized the money was fake, and Bolanos drove off the with car.

**Verdict and Sentence**

The jury found Bolanos guilty on each charged crime. The jury found the aggravated kidnapping special allegations to Count 1 not true (§ 667.61, subds. (*l*) & (d)(2) and (a) & (d)(2)). It also found the kidnapping special allegation to Count 5 not true (§ 667.61, subd. (b) & (e)(1)). The remaining special allegations were found true.

The court sentenced Bolanos to serve life without parole on Counts 2 and 3, 25 years to life on Counts 1 and 5, seven years to life on Count 4,[7] and four years, four months on Counts 6 through 9. Only the Count 9 term was stayed.

## DISCUSSION

---

[6] Victim two and her friend—Bolanos's girlfriend—communicated through Facebook. Bolanos "kicked" his girlfriend "out" after she invited victim two to visit. The girlfriend testified she invited her friend over at Bolanos's request and complied "[b]ecause he was going to hit [her] if [she] didn't [do] it." She also helped him use the Maritza Martinez profile to arrange the meeting with victim three.

[7] See section 3046, subdivision (a)(1).

This appeal presents numerous issues. We address the issues in the following order.

First, is Bolanos eligible for youthful offender parole (§ 3051)? Two, did the court properly impose a 25-year-to-life sentence on Count 5? Three, should the court have stayed two of the terms imposed on Counts 1, 2, and 3? Four, did the court fail to stay the seven-year-to-life sentence on Count 4? Five, did the evidence insufficiently prove vehicle theft (Count 8)? Six, did the court err in its grand-theft-automobile jury instructions (Count 9)? Seven, should the court have stayed two of the terms imposed for Counts 5, 6, and 7?

The People concede several issues. The People agree the court wrongly imposed a 25-year-to-life sentence on Count 5 but dispute the remedy, agree the court failed to stay the sentence on Count 4, agree the evidence failed to prove vehicle theft (Count 8), agree the court's grand-theft-automobile instructions were erroneous but disclaim prejudice, and assert the court should have stayed the sentence on Counts 6 and 7.

The People disagree the youthful offender parole scheme violates equal protection. They also believe the court appropriately sentenced Bolanos on Counts 1, 2, and 3.

We find the youthful offender parole scheme does not, on its face, violate equal protection. We agree with the parties the court erred in pronouncing a 25-year-to-life sentence on Count 5 but hold the remedy is to impose a 15-year-to-life sentence. Finally, we also agree the court failed to stay the sentence on Counts 4, 6, and 7, the evidence was insufficient to prove vehicle theft, and the court's grand-theft-automobile jury instructions were erroneous but harmless. We will remand the case with directions to enter an acquittal on Count 8 and otherwise resentence Bolanos consistent with this opinion.

## I. The Youthful Offender Parole Scheme Does Not Violate Equal Protection

As pertinent, "[a] youth offender parole hearing is a hearing by the Board of Parole Hearings for the purpose of reviewing the parole suitability of any prisoner who

5.

was 25 years of age or younger … at the time of the controlling offense." (§ 3051, subd. (a)(1).) Youthful offender parole does not apply, however, "to cases in which sentencing occurs pursuant to … [s]ection 667.61, or to cases in which an individual is sentenced to life in prison without the possibility of parole for a controlling offense that was committed after the person had attained 18 years of age." (§ 3051, subd. (h).) Both exclusions apply in this case.

Bolanos claims "[e]qual protection principals [*sic*] require the provisions of section 3051 be extended to him." "[T]he requirement of equal protection ensures that the government does not treat a group of people unequally without some justification." (*People v. Chatman* (2018) 4 Cal.5th 277, 288 (*Chatman*).)

"Where, as here, a statute involves neither a suspect class nor a fundamental right, it need only meet minimum equal protection standards, and survive 'rational basis review.' " (*People v. Turnage* (2012) 55 Cal.4th 62, 74.) Bolanos suggests "[n]o rational basis supports exclusion of first-time youthful offenders convicted of LWOP under the One Strike law when youthful offenders convicted of murder are eligible." He does not otherwise address the LWOP-as-an-adult exclusion.

The People do not agree Bolanos's exclusion from youthful offender parole violates equal protection. They instead contend "there could be a rational basis for the disparate treatment." The People focus on the One Strike exclusion and do not address the LWOP exclusion.

We conclude neither exclusion denies equal protection.[8] "[A] denial of equal protection" is found "only if there is no *rational* relationship between a disparity in

---

[8] We note, to qualify to youthful offender parole, Bolanos must overcome *both* exclusions. Even if we agreed the One Strike exclusion was improper, Bolanos is still ineligible for youthful offender parole because he was "sentenced to life in prison without the possibility of parole for a controlling offense that was committed after the person had attained 18 years of age." (§ 3051, subd. (h).)

treatment and some legitimate government purpose. [Citation.] This core feature of equal protection sets a high bar before a law is deemed to lack even the minimal rationality necessary for it to survive constitutional scrutiny. Coupled with a rebuttable presumption that legislation is constitutional, this high bar helps ensure that democratically enacted laws are not invalidated merely based on a court's cursory conclusion that a statute's tradeoffs seem unwise or unfair." (*Chatman, supra,* 4 Cal.5th at pp. 288-289.)

"[T]o decide whether a statutory distinction is so devoid of even minimal rationality that it is unconstitutional as a matter of equal protection, we typically ask two questions. We first ask whether the state adopted a classification affecting two or more groups that are similarly situated in an unequal manner. [Citation.] If we deem the groups at issue similarly situated in all material respects, we consider whether the challenged classification ultimately bears a rational relationship to a legitimate state purpose. [Citation.] A classification in a statute is presumed rational until the challenger shows that no rational basis for the unequal treatment is reasonably conceivable. [Citations.] The underlying rationale for a statutory classification need not have been 'ever actually articulated' by lawmakers, and it does not need to 'be empirically substantiated.' [Citation.] Nor does the logic behind a potential justification need to be persuasive or sensible—rather than simply rational." (*Chatman, supra,* 4 Cal.5th at p. 289.)

These principles are satisfied with respect to both section 3051 exclusions at issue in this case. We address each in turn.

First, relative to the One Strike exclusion, we are willing to assume people sentenced under the One Strike law are similarly situated to all offenders eligible for youthful offender parole. But the disparate treatment wrought by the One Strike exclusion is supported by a concern for recidivism. "[T]he Legislature appears to have excluded from early parole eligibility those whom it saw as exceptionally likely to

7.

reoffend. The One Strike law … reaches only serious sex crimes, and the electorate, in passing an initiative amending the One Strike law, has found that sex offenders 'have very high recidivism rates,' 'are the least likely to be cured[,] and [are] the most likely to reoffend.' (Voter Information Guide, Gen. Elec. (Nov. 7, 2006) text of Prop. 83, § 2(b), p. 127.)" (*People v. Miranda* (2021) 62 Cal.App.5th 162, 186 (*Miranda*), review granted June 16, 2021, S268384; accord *People v. Moseley* (2021) 59 Cal.App.5th 1160, 1170 (*Moseley*), review granted April 14, 2021, S267309; *People v. Williams* (2020) 47 Cal.App.5th 475, 493, review granted July 22, 2020, S262229.) Drawing "a line at recidivism" is neither "arbitrary [n]or irrational." (*Miranda, supra,* at p. 186.)

To be sure, the court in *People v. Edwards* (2019) 34 Cal.App.5th 183 (*Edwards*) held otherwise. There, the court rejected the People's proffered recidivism rationale, noting the People "cite[d] no evidence that violent rapists recidivate more than other felons." (*Id.* at pp. 198-199.) That may have been true. But the *Miranda* court persuasively points to tangible evidence sex offenders *do* recidivate at a rate higher than other offenders: the voter guide accompanying Proposition 83 at the 2006 election. (*Miranda, supra,* 62 Cal.App.5th at p. 186; cf. *McKune v. Lile* (2002) 536 U.S. 24, 33 ["When convicted sex offenders reenter society, they are much more likely than any other type of offender to be rearrested for a new rape or sexual assault."].) We agree with *Miranda*.

Turning to the LWOP-as-an-adult exclusion, every court has rejected an equal protection challenge aimed at this exclusion. (E.g., *People v. Sands* (2021) 70 Cal.App.5th 193, 204 ["The Legislature had a rational basis to distinguish between offenders with the same sentence (life without parole) based on their age."]; *In re Murray* (2021) 68 Cal.App.5th 456, 463-464; *People v. Morales* (2021) 67 Cal.App.5th 326, 349; *People v. Jackson* (2021) 61 Cal.App.5th 189, 196-198; *People v. Acosta* (2021) 60 Cal.App.5th 769, 779-780.) Most recently, the Second District Court of Appeal recognized "the Legislature acted rationally in deciding that individuals sentenced to life

without parole for a special-circumstance murder committed while still a minor (16 or 17 years old) were entitled to a youth offender parole hearing but young adults who committed the same offense after turning 18 were not." (*People v. Hardin* (2022) 84 Cal.App.5th 273, 278, review granted Jan. 11, 2023, S277487 (*Hardin*).)

Nonetheless, *Hardin* went on to hold there is no "rational basis for the [LWOP] distinction in eligibility for a youth offender parole hearing made by section 3051." (*Hardin, supra,* 84 Cal.App.5th at p. 290.) In other words, *Hardin* also held "[i]t is not irrational … for the Legislature to single out special-circumstance murder and to deny any possibility of parole to nonjuvenile offenders who commit it." (*Id.* at pp. 288-289.)

While we might agree an LWOP sentence for an accidental or unintended death occurring during a felony might feel unfair when assessing relative culpability (*Hardin, supra,* 84 Cal.App.5th at pp. 288-290), this case does not involve murder.[9] Even if we assume a similar situation, the One Strike law in no way punishes accidental or unintentional conduct, and rational basis review does not demand perfect legislation.[10] ((*Johnson v. Department of Justice* (2015) 60 Cal.4th 871, 887 (*Johnson*).)

In any event, Bolanos does not raise an as-applied challenge[11] to the youthful offender parole exclusion. In this regard, *Hardin, supra,* 84 Cal.App.5th 273 is

---

[9] To the extent one might argue murder convicts deserve the harshest punishment (see *Edwards, supra,* 34 Cal.App.5th at pp. 196-197), that distinction endures. Only a first degree murder conviction is eligible for a literal death sentence. (See § 190.2, subd. (a).)

[10] At least one court has found One Strike offenders are not similarly situated to murder convicts. (See *Moseley, supra,* 59 Cal.App.5th at p. 1169 ["offenders who commit different crimes are not similarly situated."].) We need not answer this question because it is unnecessary to resolve the issue.

[11] "An as applied challenge … seek[s] relief from a specific application of a facially valid statute …." (*Tobe v. City of Santa Ana* (1995) 9 Cal.4th 1069, 1084 (*Tobe*).) "When a criminal defendant claims that a facially valid statute … has been applied in a constitutionally impermissible manner to the defendant, the court evaluates

distinguishable. There, "[t]he trial court … rul[ed] section 3051 … was 'not unconstitutional as applied to persons sentenced to life without the possibility of parole.' " (*Id.* at p. 280.)

In contrast, Bolanos here did not raise equal protection in the trial court, nor did he attempt to raise an as-applied argument in this court.[12] Accordingly, he " 'cannot prevail by suggesting that in some future hypothetical situation constitutional problems may possibly arise as to the particular *application* of the statute.' " (*Zuckerman v. State Board of Chiropractic Examiners* (2002) 29 Cal.4th 32, 39.) Indeed, he has not even suggested such an outcome and we have no occasion to weigh Bolanos's relative culpability against a hypothetical felony-murderer sentenced to LWOP.[13]

On the whole, the Legislature could rationally conclude crimes for which LWOP is a possible sentence, even when committed by young adults, are especially indicative of incorrigibility so as to not warrant a parole hearing.[14] It is true, on the other hand, the Legislature has explicitly recognized "neuroscience research that the human brain— especially those portions responsible for judgment and decisionmaking—continues to develop into a person's mid-20s." (*Edwards, supra,* 34 Cal.App.5th at p. 198.) But it

_____

the propriety of the application on a case-by-case basis to determine whether to relieve the defendant of the sanction." (*Ibid.*)

"A facial challenge to the constitutional validity of a statute … considers only the text of the measure itself, not its application to the particular circumstances of an individual." (*Tobe, supra,* 9 Cal.4th at p. 1084.) Bolanos has not claimed any case-by-case disparity and we will not consider any disparity on our motion.

[12] Indeed, we might ponder whether the equal protection question is ripe for review. Bolanos has not yet been denied any statutory or constitutional right.

[13] A " 'facial challenge' " to a statute "does not require scrutiny of individual facts and circumstances but instead requires the review of abstract and generalized legal concepts …." (*In re Sheena K.* (2007) 40 Cal.5th 875, 885.)

[14] Juvenile offenders sentenced to life without parole are of course eligible for parole under section 3051, subdivision (b)(4).

10.

takes no special insight to understand, as a general matter, biological development and maturity is a continuum and a young adult, even if not fully mature, is more mature than a juvenile.

On this point, " '[w]hen conducting rational basis review, we must accept any gross generalizations and rough accommodations that the Legislature seems to have made.' [Citation.] 'A classification is not arbitrary or irrational simply because there is an "imperfect fit between means and ends" ' [citations], or 'because it may be "to some extent both underinclusive and overinclusive …." ' ' " (*Johnson, supra,* 60 Cal.4th at p. 887.) Accordingly, for all these reasons we conclude a rational basis supports the Legislature's LWOP-as-an-adult exclusion from youth offender parole eligibility. In sum, there is a rational basis underlaying both section 3051 exclusions in this case— the One Strike exclusion and the LWOP-as-an-adult exclusion. Bolanos's counterarguments fail.[15] (See *Heller v. Doe by Doe* (1993) 509 U.S. 312, 320 [" '[t]he burden is on the one attacking the legislative arrangement to negat[e] every conceivable basis which might support it"].)

## II. A One Strike Sentence On Count 5 Authorized

Depending on the circumstances pled and proven, the One Strike law mandates imprisonment for 15 years to life, 25 years to life, or LWOP. (§ 667.61, subds. (a), (b), (j), (*l*), and (m).) At issue in this case are section 667.61, subdivisions (a) and (b).

Section 667.61, subdivision (a) states: "Except as provided in subdivision (j), (*l*), or (m), a person who is convicted of an offense specified in subdivision (c) under one or more of the circumstances specified in subdivision (d) or under two or more of the circumstances specified in subdivision (e) shall be punished by imprisonment in the state prison for 25 years to life." Section 667.61, subdivision (b) states: "Except as provided in subdivision (a), (j), (*l*), or (m), a person who is convicted of an offense specified in

---

[15] We express no opinion on any as-applied challenge to the law.

subdivision (c) under one of the circumstances specified in subdivision (e) shall be punished by imprisonment in the state prison for 15 years to life." The difference between the two subdivisions are the quantity and quality of circumstances proven.

Here, relative to Count 5, the People charged two special allegations. The first special allegation, reproduced in full below, charged a kidnapping circumstance pursuant to section 667.61, subdivision (e)(1) and referenced both subdivisions (a) and (b). The second special allegation, reproduced in full below, charged a multiple victim circumstance pursuant to section 667.61, subdivision (e)(4) and referenced only subdivision (a).

Because the jury found true only the multiple victim circumstance, a 25-year-to-life sentence under section 667.61, subdivision (a) is unauthorized because that subdivision requires *two* proven subdivision (e) circumstances.[16] The trial court plainly erred in pronouncing a 25-year-to-life sentence. The question is what is the remedy?

The People claim the trial court should pronounce sentence pursuant to section 667.61, *subdivision (b)*. Bolanos asserts no One Strike sentence is permitted because the only circumstance found true referenced *subdivision (a)*, which requires *two* proven circumstances. Based on the record in this case, we agree with The People.

**A. Additional Background**

The Count 5 special allegations—as charged by the People and reproduced in full—follow:

"SPECIAL ALLEGATION 1

PC667.61(b)/(c)/(e)(1): Aggravating Circumstances

IT IS FURTHER ALLEGED As to Count 5 within the meaning of State of California Penal Code Sections 667.61(a), (c)(7) and (e)(1), as to CARLOS ALFONSO

---

[16] For clarity, only one section 667.61, subdivision (d) circumstance is necessary to prove to invoke the One Strike law. But that subdivision is not at issue here.

12.

BOLANOS, that the following circumstances apply: the defendant kidnapped the victim of the present offense in violation of Section 207, 209, or 209.5

SPECIAL ALLEGATION 2

PENAL CODE SECTION 667.61(a)/(c)/(e)(4): Aggravating Circumstances

IT IS FURTHER ALLEGED, as to Counts 1 through 3 and Count 5, within the meaning of State of California Penal Code Sections 667.61(a), (c)(1), (c)(7) and (e)(4), as to CARLOS ALFONSO BOLANOS, that the following circumstances apply: the defendant has been convicted in the present case or cases of committing an offense specified in subdivision (c) against more than one victim."

As noted, the jury found Special Allegation 2 true, and Special Allegation 1 not true.

**B. Analysis**

" ' "No principle of procedural due process is more clearly established than that notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge, if desired, are among the constitutional rights of every accused in a criminal proceeding in all courts, state or federal." [Citations.] "A criminal defendant must be given fair notice of the charges against him in order that he may have a reasonable opportunity properly to prepare a defense and avoid unfair surprise at trial." ' [Citation.] This goes for sentence enhancements as well as substantive offenses: A defendant has the 'right to fair notice of the specific sentence enhancement allegations that will be invoked to increase punishment for his crimes.' " (*People v. Anderson* (2020) 9 Cal.5th 946, 953 (*Anderson*).)

"[W]here the information puts the defendant on notice that a sentence enhancement will be sought, and further notifies him of the facts supporting the alleged enhancement, modification of the judgment for a misstatement of the underlying enhancement statute is required only where the defendant has been misled to his prejudice." (*People v. Neal* (1984) 159 Cal.App.3d 69, 73 (*Neal*); *In re Vaquera* (2019)

39 Cal.App.5th 233, 239, review granted Nov. 26, 2019, S258376 ["even if the People allege the wrong numbered statute, the pleading is still valid if it alleges facts sufficient to give the defendant fair notice of the alleged crime and/or sentence enhancement and the defendant was not prejudicially misled"].)

Here, we believe the information adequately notified Bolanos the People were seeking a sentence under the One Strike law based on the multiple victim circumstance in section 667.61, subdivision (e)(4). There is no doubt the information actually invoked the One Strike law and properly pled the multiple victim circumstance.

The only question is whether it is proper for the court to pronounce judgment on Count 5 pursuant to section 667.61, subdivision (b). Bolanos takes issue with the fact Special Allegation 2, alleging the multiple victim circumstance, did not further reference section 667.61, subdivision (b). We believe, the People having specifically pled the multiple victim circumstance, it was unnecessary to further reference section 667.61, subdivision (b).

In *Neal, supra,* "the information alleged [the] appellant used a deadly weapon within the meaning of section 12022, subdivision (b). The jury found the use allegations to be true. The court enhanced the terms imposed … pursuant to section 12022.3." (*Neal, supra,* 159 Cal.App.3d at p. 72, fn. omitted.) Section 12022.3 provided a three year enhancement, while section 12022, subdivision (b)—the enhancement actually charged—provided only a one year enhancement. The appellant claimed the three year enhancement violated due process. The appellate court rejected the argument, holding "modification of the judgment for a misstatement of the underlying enhancement statute is required only where the defendant has been misled to his prejudice." (*Neal, supra,* at p. 73.)

The California Supreme Court explicitly sanctioned *Neal, supra,* in *People v. Thomas* (1987) 43 Cal.3d 818 (*Thomas*). There, the Court stated *Neal, supra,* "engaged in the proper analysis" and "correctly identified the issue as 'whether the misstatement of

14.

the code section … requires modification of the judgment ….' " (*Thomas, supra,* at pp. 830-831.) These cases have never been overruled and we find them dispositive.

It is true, as Bolanos points out, the California Supreme Court, in *People v. Mancebo* (2002) 27 Cal.4th 735 (*Mancebo*), described strict pleading and proof requirements under the One Strike law. But those requirements relate to *circumstances*, not *punishment*. (See *id.,* at p. 751 ["provisions of the One Strike law … require that subdivision (e) qualifying circumstances be 'pled and proved' …, 'be alleged in the accusatory pleading and either admitted by the defendant in open court or found true by the trier of fact,' " and to apply the proven circumstances to a One Strike sentence before using additional circumstances to impose a lesser enhancement]; *Anderson, supra,* 9 Cal.5th at p. 954 ["*Mancebo's* holding was limited to the pleading requirements of section 667.61, subdivisions (f) and (i)."].) The charges in this case complied with the One Strike law's strict pleading requirements.

Neither party disputes the multiple victim circumstance was pled and proved. The only dispute is whether the pleading violated due process by not affording Bolanos notice a One Strike sentence was mandatory under section 667.61, *subdivision (b)*.

But Bolanos makes no attempt to demonstrate prejudice. Accordingly, there is no due process violation in this case.[17] (*Neal, supra,* 59 Cal.App.3d at p. 73; *Thomas, supra,* 43 Cal.3d at pp. 830-831.) On remand, the trial court may—and shall—properly sentence Bolanos on Count 5 pursuant to section 667.61, subdivision (b).

## III. The Sentences On Counts 1 Through 3 Are Proper

The court pronounced consecutive One-Strike-law sentences for each sex-crime conviction committed against victim one, as charged in Counts 1, 2, and 3. Bolanos contends, because each sentence was "based on the same act of kidnapping" and

---

[17] We independently discern no prejudice. On a related note, in *Mancebo, supra,* the Court recognized due process does not require "specific[ally]" pleading "numerical subdivision[s] …." (*Mancebo, supra,* 27 Cal.4th at p. 753.)

"[s]ection 654 prohibits multiple punishment for the same act," the court could apply "the One Strike law only to one count."

The People argue, because "section 654 does not preclude multiple punishment for the substantive crimes," it "does not preclude punishment for attached enhancements …." We hold the sentences at issue here do not violate section 654.

As relevant, section 654 states "[a]n act or omission that is punishable in different ways by different provisions of law may be punished under either of such provisions, but in no case shall the act or omission be punished under more than one provision." Section 654 "ensure[s] that a defendant's punishment will be commensurate with his culpability." (*People v. Correa* (2012) 54 Cal.4th 331, 341 (*Correa*).)  It "does *not* bar multiple punishment simply because numerous sex offenses are rapidly committed against a victim with the 'sole' aim of achieving sexual gratification." (*People v. Harrison* (1989) 48 Cal.3d 321, 325.)  " 'A person who commits separate, factually distinct, crimes, even with only one ultimate intent and objective, is more culpable than the person who commits only one crime in pursuit of the same intent and objective.' " (*Correa, supra,* at p. 341.)  These principles are controlling.

" '[T]he One Strike law is an alternative sentencing scheme ….' " (*People v. Carbajal* (2013) 56 Cal.4th 521, 534.)  " '[I]t applies only to certain felony sex offenses.' " (*Ibid.*)

In this case, Bolanos committed three discrete One Strike crimes while substantially moving the victim between each crime,[18] impliedly ignoring multiple

---

[18] For this reason, it does not matter—as Bolanos argues—kidnapping is a continuous crime.  (See *People v. Burney* (2009) 47 Cal.4th 203, 233.)  Here, Bolanos committed *three distinct* One Strike crimes against victim one.

To suggest an exception for One Strike crimes based on a kidnapping circumstance would permit a single prison term for a person who succeeds in kidnapping and secreting a victim for a lengthy time period, while otherwise committing innumerable sex crimes.  Such an interpretation would reward the most culpable individuals and we reject it because the One Strike law's purpose is "to increase the penalties imposed on

opportunities to abandon his criminal endeavor.[19]  There is no reason to believe

section 654 should apply in this circumstance, and we find it does not.

In any event, section 667.61, subdivision (h) states "[n]otwithstanding any other

law, probation shall not be granted to, nor shall the execution or imposition of sentence

be suspended for, a person who is subject to punishment under" the One Strike law.  The

First District Court of Appeal recently held this subdivision means section 654 does not

apply to the One Strike law.  (*People v. Caparaz* (2022) 80 Cal.App.5th 669, 688-690

(*Caparaz*).)  We agree.  The Count 1, 2, and 3 sentences will remain.

## IV.  The Trial Court Must Stay the Sentence On Count 4

The jury found Bolanos guilty of kidnapping (§ 209, subd. (b)) as charged in

Count 4.  The jury used the same act—kidnapping—to find true the One Strike

allegations charged in Counts 1, 2, and 3.

The court imposed a consecutive sentence for Count 4.  Bolanos contends the

sentence is prohibited by law.  The People agree.  The parties are correct.

As relevant, section 667.61 states:

> "If only the minimum number of circumstances specified in
> subdivision (d) or (e) that are required for the punishment
> provided in subdivision (a), (b), (j), (*l*), or (m) to apply have
> been pled and proved, that circumstance or those
> circumstances shall be used as the basis for imposing the term

---

defendants who commit certain sexual offenses under specified circumstances."
(*People v. Betts* (2020) 55 Cal.App.5th 294, 299; cf. *People v. Jackson* (2016) 1 Cal.5th
269, 354-355 [prior law permitted " 'a *single* … sentence … for a sequence of sexual
assaults by [a] defendant against one victim that occurred during an uninterrupted time
frame and in a single occasion.' "].)

[19] Section 667.61, subdivision (i) mandates consecutive sentences for "crimes
involv[ing] … the same victim on separate occasions …."  A separate occasion is defined
by reference to section 667.6, subdivision (d), which in part requires "consider[ation of]
whether, between the commission of one sex crime and another, the defendant had a
reasonable opportunity to reflect upon the defendant's actions and nevertheless resumed
sexually assaultive behavior."  Bolanos certainly had opportunities to reflect.

provided in subdivision (a), (b), (j), (*l*), or (m) whichever is greater, rather than being used to impose the punishment authorized under any other law ….”  (§ 667.61, subd. (f).)

Likewise, section 209, subdivision (d) states “a person may not be punished under [section 209,] subdivision (b) and [s]ection 667.61 for the same act that constitutes a violation of both subdivision (b) and [s]ection 667.61.”

There is neither dispute nor doubt the trial court violated these sections.  On remand, when the court again pronounces judgment, it must stay the sentence on Count 4.

## V.  The Evidence Failed To Prove Vehicle Theft (Count 8)

The jury convicted Bolanos for violating Vehicle Code section 10851, subdivision (a).  As pertinent, to prove the violation, the People had to prove Bolanos took the car “without the consent of the owner ….”  (Veh. Code, § 10851, subd. (a); *People v. Bullard* (2020) 9 Cal.5th 94, 102.)  Bolanos now claims he took the vehicle at issue with the owner’s consent.

The People concede.  We accept the concession.

Here, Bolanos took the vehicle with the owner’s consent, albeit in a fraudulent manner.  But, “ ‘ “unless there is statutory language to the contrary, whenever lack of consent is a necessary element of a crime, the fact that consent is obtained through misrepresentation will not supply the essential element of nonconsent.” ’ ”  (*People v. Stuedemann* (2007) 156 Cal.App.4th 1, 7; *People v. Donell* (1973) 32 Cal.App.3d 613, 617 [taking a vehicle with “ ‘fraudulently induced consent is consent nonetheless’ ”].)

Because Bolanos had the owner’s consent, the conviction for taking a vehicle without the owner’s consent is insufficiently proven and cannot stand.  He is entitled to an acquittal on Count 8.  (See *People v. Rodriguez* (2018) 4 Cal.5th 1123, 1129-1130 [double jeopardy clauses bar retrial if reversal is based on insufficient evidence].)

## VI.  The Grand Theft Automobile Conviction Is Affirmed

In Count 9, the jury found Bolanos guilty of “grand theft auto,” a violation of section 484/487(d)(1) ….”  Bolanos claims “the conviction must be reversed” because it

was "based on the theory of larceny, which requires a showing that the property was taken without the owner's consent." He adds that, "[a]lthough the evidence might have supported a finding of theft by false pretenses, the jury was not instructed on that theory" and a "conviction cannot be upheld based on a theory on which the jury was not instructed."

The People acknowledge "the jury was indeed instructed on the wrong theory of theft." They "disagree that any remedy is called for."

We find the court erred in its jury instructions. For the following reasons, the error is not prejudicial.

## A. Additional Background

Relative to Count 9, the court instructed the jury as follows:

> "The defendant is charged in Count 9 with grand theft.
>
> To prove that the defendant is guilty of this crime, the People must prove that:
>
> 1. The defendant took possession of property owned by someone else;
>
> 2. The defendant took the property without the owner's consent;
>
> 3. When the defendant took the property he intended to deprive the owner of it permanently or to remove it from the owner's possession for so extended a period of time that the owner would be deprived of a major portion of the value or enjoyment of the property;
>
> AND
>
> 4. The defendant moved the property, even a small distance, and kept it for any period of time, however brief." (See CALCRIM No. 1800.)

19.

The court did not instruct the jury with any other theft theory, including theft by false pretenses. (See CALCRIM No. 1804.)

### B. Analysis

"The trial court has a sua sponte duty to instruct the jury on the essential elements of the charged offense." (*People v. Merritt* (2017) 2 Cal.5th 819, 824 (*Merritt*).) Failure to do so is "very serious constitutional error because it threatens the right to a jury trial that both the United States and California Constitutions guarantee." (*Ibid.*)

" 'Where the effect of the omission can be "quantitatively assessed" in the context of the entire record (and does not otherwise qualify as structural error), the failure to instruct on one or more elements is mere " 'trial error' " and thus amenable to harmless error review." (*Merritt, supra,* 2 Cal.5th at p. 828.) "Certainly, the more elements that are omitted, the less likely it is that the error is harmless, but so long as the error does not vitiate *all* of the jury's findings, it is amenable to harmless error analysis." (*Id.* at p. 829.) "An instructional error involving multiple elements, like an error involving a single element, will be deemed harmless only in unusual circumstances, such as where each element was undisputed, the defense was not prevented from contesting any of the omitted elements, and overwhelming evidence supports the omitted element." (*People v. Mil* (2012) 53 Cal.4th 400, 414.)

Not all of the jury's findings are vitiated in this case.[20] There was little doubt Bolanos committed the theft—he conceded the crime and testified to its commission.[21]

---

[20] For example, the jury *did* find Bolanos took another person's property. Such a finding is the baseline for all theft.

[21] Bolanos testified he purchased the car with "fake money." After his testimony but before closing arguments, defense counsel informed the court, "I have had a chance to talk to Mr. Bolanos about this, and we believe it to be strategically in our best interest … to concede" Counts 8 and 9.

In closing argument, defense counsel stated, "Regarding … charges number 8 and 9, those are regarding the vehicle theft. My client admitted that, yes, he took the car. … [T]he evidence is abundantly clear that it's beyond a reasonable doubt that he did that.

" 'One situation in which instructional error removing an element of the crime from the jury's consideration has been deemed harmless is where the defendant concedes or admits that element.' " (*Merritt, supra,* 2 Cal.5th at p. 831.) Such is the case here—Bolanos did not contest the crime and instead confessed to it in open court.

The remaining, omitted[22] theft-by-false-pretense elements were " 'uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error[. T]he erroneous instruction is properly found to be harmless.' " (*Merritt, supra,* 2 Cal.5th at p. 832.) We will affirm the Count 9 grand theft auto conviction but in doing so acknowledge "appellate factfinding is permitted to cure a failure to instruct on one or two elements, [but] at some point the severity of the error must tip the balance the other way." (*Id.* at p. 835 (conc. opn. of Liu, J.).) Based on the record in this case, we do not believe the balance has tipped.

## VII. The Trial Court Should Stay the Sentences On Counts 6 and 7

In Counts 5, 6, and 7, the jury convicted Bolanos of forcible oral copulation, false imprisonment, and criminal threats for the crimes committed against victim two. The court sentenced Bolanos to serve an indeterminate term on Count 5,[23] and an additional three years, eight months on Counts 6 and 7.

Bolanos contends "section 654 requires stay of two of the three sentences in counts 5, 6[,] and 7." The People suggest "the sentences on Counts 6 and 7 must be stayed."

---

And that's the one for number 8 and 9, regarding the car theft, that's an easy one to go back – as a jury, the first thing you should probably, after you elect a foreperson is circle guilty on those two charges."

[22] See CALCRIM No. 1804.

[23] See **II.**, *ante*.

21.

We agree with the People.  On remand, the court must stay the sentence on Counts 6 and 7.[24]

## **DISPOSITION**[25]

The judgment on Count 8 is reversed.  The terms imposed on Counts 4, 5, 6, and 7 are vacated.  The trial court is directed to enter judgment of acquittal on Count 8, and

---

[24] Bolanos correctly notes section 654 now allows the court to stay the sentence on any count, including the count carrying the longest sentence.  But he also correctly notes section 667.61, subdivision (h) contains an exception to this rule.  Because we have found the court must also impose a One Strike sentence on Count 5 (see **II.**, *ante*), the court must impose that sentence and stay sentence on Counts 6 and 7.  (See *Caparaz, supra,* 80 Cal.App.5th at pp. 689-690.)  For this reason, we note the recent amendment to section 654 has no application to this case.  (See, generally, *People v. Mani* (2022) 74 Cal.App.5th 343, 351.)

[25] We note the trial court's oral pronouncement of judgment included a stay on count 9.  The abstract of judgment does not reflect the stay.  On remand, the court must ensure the abstract of judgment reflects the court's oral pronouncement.

pronounce judgment on Counts 4, 5, 6, and 7 consistent with this opinion.  The judgment is otherwise affirmed.


SNAUFFER, J.

WE CONCUR:


POOCHIGIAN, Acting P. J.


DETJEN, J.